# EXHIBIT A

« Return to search results

## Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2025-014346 | **Judge:** | Minder, Scott |
| **File Date:** | 4/23/2025 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Dustin Heintzman | Plaintiff | Male | Pro Per |
| Lincoln Financial | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 5/8/2025 | AFS - Affidavit Of Service | 5/15/2025 | |
| **NOTE:** | LINCOLN FINANCIAL | | |
| 5/8/2025 | SUM - Summons | 5/16/2025 | Plaintiff(1) |
| 4/23/2025 | COM - Complaint | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | CSH - Coversheet | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | CCN - Cert Arbitration - Not Subject | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | NJT - Not Demand For Jury Trial | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | ADW - Application Deferral/Waiver | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | ASA - Affidavit in Support of Application for Deferral or Waiver of Service Process Costs | 4/26/2025 | Plaintiff(1) |
| 4/23/2025 | OWV – ORDER WAIVING COURT FEES AND/OR COSTS | 4/26/2025 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|
| **No records found.** | | | | | |

# EXHIBIT B

# MARICOPA COUNTY SHERIFF'S OFFICE

Civil Process Section
111 South 3rd Avenue, 2nd Floor
Phoenix, Arizona 85003-2292

CLERK OF THE SUPERIOR COURT
RECEIVED CCB #1
DOCUMENT DEPOSITORY

2025 MAY -8 PM 3:59

FILED
BY V. GIGANTE, DEP

Dustin Heintzman
vs.
Lincoln Financial

| | | |
|---|---|---|
| STATE OF ARIZONA | ) | CV2025-014346 |
| | ) ss. | |
| County of Maricopa | ) | 25004321 |

I hereby certify that I received the within documents on the **23rd** day of **April** A.D. **2025** at the hour of **11:15 AM**, and served the same on the **2nd** day of **May** A.D. **2025**on **Lincoln Financial** being said defendant(s) named in said documents, by delivering to **Carly Cardenas**, who is authorized to accept service, at **7955 S Priest Drive, Suite 102, Tempe, AZ 85284** at **2:20 PM** in the County of Maricopa, a copy of said **Summons, Civil Complaint, Certificate Of Compulsory Arbitration, Plaintiff's Demand For Jury Trial.**

**Dated this 2nd day of May A.D. 2025.**

Total $0.00

JERRY SHERIDAN
Maricopa County Sheriff

By ______________________
Deputy David Sheets #S0827

B4307

# EXHIBIT C

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44th Dr
City, State, Zip Code: Phoenix AZ 85087
Telephone: 4804570939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number: ______

Representing ☐ Self, without a Lawyer or ☐ Attorney for ☐ Plaintiff OR ☐ Defendant

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

CV2025-014346

Dustin Heintzman
Name of Plaintiff

Case No.: ______

And

Lincoln financial
Name of Defendant

## SUMMONS

Connect with a qualified lawyer through the Lawyer Referral Service. Simply scan the QR code to complete a referral or call us directly at 602-257-4434. Sponsored by the Maricopa County Bar Association

**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

**FROM THE STATE OF ARIZONA TO:** Lincoln financial
Name of Defendant

1. **A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons."***

2. **If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:**

   - **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 *OR***
   - **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 *OR***
   - **Office of the Clerk of Superior Court, 222 East Javelina Avenue, Mesa, Arizona 85210-6201 *OR***
   - **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

   **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ________________

3. **If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.**

4. **You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:**

   - **601 West Jackson, Phoenix, Arizona 85003**
   - **18380 North 40th Street, Phoenix, Arizona 85032**
   - **222 East Javelina Avenue, Mesa, Arizona 85210**
   - **14264 West Tierra Buena Lane, Surprise, Arizona 85374.**

5. **Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least three (3) judicial days in advance of a scheduled proceeding.**

6. **Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.**

7. **Eviction Actions/Forcible Detainers: If you want to request a telephonic hearing, please contact the judge assigned to your case. If you do not know your assigned judge, or have not been assigned a judge, please contact Civil Court Administration at 602-506-1497.**

**SIGNED AND SEALED this date**

______________________________
**CLERK OF SUPERIOR COURT**

COPY

By______________________________
**Deputy Clerk**

APR 23 2025

COURT SEAL
SUPERIOR COURT IN MARICOPA CO. State of Arizona

CLERK OF THE SUPERIOR COURT
O. PEREZ DOMINGUEZ
DEPUTY CLERK

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

# EXHIBIT D

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44th Dr
City, State, Zip Code: Phoenix AZ 85087
Telephone: 4804570939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number:

Representing ☐ Self, without a Lawyer or ☐ Attorney for ☐ Petitioner OR ☐ Respondent

COPY
APR 2 3 2025
CLERK OF THE SUPERIOR COURT
O. PEREZ DOMINGUEZ
DEPUTY CLERK

COURT SEAL

# SUPERIOR COURT OF ARIZONA IN MARICOPA COUNTY

Dustin Heintzman
Name of Plaintiff

Lincoln financial
Name of Defendant

Case Number: CV2025-014346

Title: **CIVIL COMPLAINT**

Plaintiff hereby submits this complaint against Defendant(s) and alleges the following:

## JURISDICTION and VENUE

1. Maricopa County Superior Court has the legal authority to hear and decide this case because: *(Check all boxes that are true.)*

- ☒ The value of this case exceeds $10,000 dollars.
- ☐ Replevin or other nonmonetary remedy will take place in Maricopa County.
- ☒ The Plaintiff resides in Maricopa County.
- ☐ The Defendant resides in Maricopa County.
- ☒ The Defendant does business in Maricopa County.
- ☐ The events, actions, or debts subject of this Complaint occurred in Maricopa County.
- ☐ Other reason: ____________________

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

## DISCOVERY TIER

2. Pursuant to Arizona Rules of Civil Procedure, Rule 26.2 (c) (3), the Court should assign my case to the following tier based on the amount of damages I request.

☐ Tier 1 = Actions claiming $50,000 or less in damages.

☐ Tier 2 = Actions claiming more than $50,000 and less than $300,000 in damages,

OR Actions claiming nonmonetary relief.

☒ Tier 3 = Actions claiming $300,000 or more in damages.

## PARTIES

3. The Plaintiff in this case is Dustin Heintzman

4. The Defendant in this case is Lincoln financial and it's service representatives and management and leadership supervisors

## STATEMENT OF FACTS AND BREACH

5. See complaint

6. ______

7. ______

8. ______

9. ______

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

10.______________________________________________

________________________________________________

(If you need more space, add an attachment labeled "Statement of Facts and Breach," and continue consecutive numbering.)

## APPLICABLE LAW SUPPORTING CLAIMS

(     ) see complaint

________________________________________________

(     ) ________________________________________

________________________________________________

(     ) ________________________________________

________________________________________________

(     ) ________________________________________

________________________________________________

(     ) ________________________________________

________________________________________________

(     ) ________________________________________

________________________________________________

(If you need more space, add an attachment labeled "Applicable Laws Supporting Claims," and continue consecutive numbering.)

## INJURIES

(     ) ________________________________________

________________________________________________

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

(If you need more space, add an attachment labeled "Injuries," and continue consecutive numbering.)

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendant(s), and each of them (if applicable) for the following dollars, interest, costs and expenses incurred herein, **or** non-monetary remedy, including reasonable attorneys' fees, and for such other and further relief as the Court may deem just and proper.

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

( ) ______________________________________________

______________________________________________

(If you need more space, add an attachment labeled "Demand for Relief," and continue consecutive numbering.)

Dated this 4/23/25.
*(Date of signature)*

______________________________
*(Signature of Plaintiff or Plaintiff's Attorney)*

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

---

**Dustin Heintzman,**
Plaintiff,

v.

**LINCOLN FINANCIAL GROUP,**
Defendant.

Case No.: [To be assigned]

---

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

---

**COMES NOW** the Plaintiff, Dustin Heintzman, appearing herein pro se, and brings this civil action against Defendant Lincoln Financial Group ("Lincoln Financial" or "Defendant"), and in support thereof alleges and states as follows:

---

## I. INTRODUCTION

1. This civil lawsuit arises out of Defendant Lincoln Financial's egregiously wrongful handling of Plaintiff's short-term disability ("STD") insurance benefits claim. Defendant engaged in a pattern and practice of delay, misinformation, misrepresentation, and bad faith denial that contravened the express terms of the insurance contract issued by Defendant, as well as Arizona law.

2. Defendant's conduct flagrantly violated Plaintiff's contractual rights and statutory protections as a disabled insured individual, resulting in substantial financial loss, emotional distress, and worsening physical and mental health conditions.

3. Plaintiff seeks full compensatory damages reflecting the financial harm caused, punitive damages to punish Defendant's malicious and oppressive conduct, injunctive relief to ensure correction of erroneous employment records and reinstatement of benefits, as well as attorneys' fees and costs, and any other relief this Court deems just and equitable.

4. Specifically, Plaintiff demands punitive damages in the amount of One Hundred Million Dollars ($100,000,000) as a necessary deterrent against Defendant's systemic abuse and violation of insured rights.

---

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under A.R.S. § 12-123 et seq., allowing jurisdiction over civil matters within the State of Arizona, including insurance contract disputes and tort claims.

6. Venue is proper in Maricopa County, Arizona, under A.R.S. § 12-401 because the wrongful acts giving rise to this complaint occurred within this county, and Defendant conducts substantial and continuous business in Maricopa County.

---

## III. PARTIES

7. **Plaintiff, Dustin Heintzman**, is a natural person who is a resident of Maricopa County, Arizona. At all relevant times, Plaintiff was employed by Wells Fargo and was an insured under a short-term disability insurance policy issued and administered by Defendant Lincoln Financial.

8. **Defendant Lincoln Financial Group** is a corporation duly incorporated and authorized to conduct business in Arizona with its principal place of business at PO Box 49410, Charlotte, North Carolina 28277. Defendant is engaged in providing insurance products and administering disability benefit claims, including the short-term disability insurance policy covering Plaintiff.

---

## IV. FACTUAL ALLEGATIONS

### A. Background and Initiation of Disability Claim

9. On or about May 4, 2024, Plaintiff was forced to take a leave of absence from employment due to a disabling medical condition which significantly limited one or more of Plaintiff's major life activities, entitling Plaintiff to benefits under the short-term disability policy issued by Defendant.

10. Plaintiff promptly and properly submitted a claim for short-term disability benefits in compliance with all applicable procedural requirements, including timely submission of comprehensive medical documentation and all forms mandated by Defendant's policy and claims protocol.

11. Plaintiff timely notified his direct supervisor at Wells Fargo regarding the need for leave, and all communications were made in compliance with employer policies and Defendant's instructions.

### B. Defendant's Improper Handling and Delays

12. From the initiation of the claim, Defendant engaged in unreasonable and dilatory conduct, creating pervasive delays in acknowledging receipt and processing Plaintiff's claim documents.

13. Plaintiff made repeated efforts to contact Defendant's claims representatives who routinely failed to respond promptly, left calls unanswered, and failed to provide adequate explanations for delay or refusal of benefits.

14. Defendant's delay exacerbated Plaintiff's financial hardship and imposed undue stress during a time of medical vulnerability.

15. Defendant's agents exhibited a gross lack of professionalism through evasive communication, misstatements regarding Plaintiff's eligibility, and disregard of the extensive and persuasive medical evidence submitted.

### C. Fabrication and Unauthorized Alteration of Records

16. Lincoln Financial representative Tracy R., without Plaintiff's authorization or consent, wrongfully fabricated documentation purporting to extend Plaintiff's leave of absence by nearly one year beyond the dates substantiated by medical records.

17. Plaintiff discovered this unauthorized alteration through receipt of documentation contradicting Plaintiff's own medical records and timelines, confirming no such extension had been approved or medically justified.

18. When Plaintiff raised these improprieties with Defendant's supervisory representative Andrew, Defendant superficially acknowledged Plaintiff's complaint but failed to conduct any substantive investigation or take corrective measures.

19. Plaintiff sought review by higher management, including Andrew's superior Michael, and attempted to engage state regulatory authorities to no avail, as Defendant failed to provide any response or remedial

action.

20. Defendant continues to misclassify Plaintiff's employment status as "terminated" or "fired," a material misrepresentation which contradicts factual evidence, including audio recordings from Wells Fargo personnel affirming Plaintiff's active leave status until April 8, 2025.

**D. Hostile Claims Environment and Wrongful Denial**

21. Throughout all communications, Plaintiff was met with a hostile and dismissive attitude from Defendant's customer service representatives who refused to properly acknowledge critical voicemails and inquiries raised by Plaintiff.

22. Plaintiff's claim was unjustly and summarily denied, including through a denial communicated by an unidentified representative named Amy, who failed to provide credentials or substantive explanations and ignored Plaintiff's requests for managerial review.

23. The denial letter issued by Defendant included offensive and patently unlawful criteria, asserting that to qualify for benefits Plaintiff must exhibit symptoms such as suicidal ideation, homicidal ideation, or psychosis — a standard inconsistent with the policy terms, medical evidence, and established legal precedent. (See attached Exhibit A.)

24. Plaintiff was compelled to seek legal counsel to challenge Defendant's wrongful denial, incurring additional financial and emotional burdens attributable solely to Defendant's bad faith practices.

**E. Breach of Contract and Bad Faith Conduct**

25. Defendant's conduct constitutes a breach of the insurance contract by failing to pay Plaintiff benefits in accordance with the Policy terms, and by terminating benefits effective September 2024 without proper factual or legal justification.

26. Defendant acted in bad faith with full knowledge or reckless disregard of Plaintiff's rights, engaging in misrepresentations, fabrication of claim dates, failure to investigate, and intentional concealment of accurate information.

27. Supervisory personnel abdicated their duty to enforce compliance with fair claims handling standards, and actively shielded subordinate employees despite clear evidence of violations.

28. Plaintiff has suffered severe emotional distress, including anxiety, depression, and worsening physical health directly attributable to Defendant's mishandling and hostile treatment during the claims process.

---

## V. CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT

29. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

30. Plaintiff and Defendant entered into a valid and binding short-term disability insurance contract.

31. Plaintiff upheld all contractual obligations, including timely submission of claim forms, evidence, and cooperation with claim investigations.

32. Defendant breached its contractual duties by failing to pay all benefits due under the Policy, unjustifiably denying Plaintiff's claims, and wrongfully terminating benefits without cause or notice.

33. As a proximate result of Defendant's breach, Plaintiff has incurred lost insurance benefits, financial hardship, and consequential damages including emotional distress, all in an amount to be proven at trial.

**COUNT II: BAD FAITH INSURANCE PRACTICES**

34. Plaintiff incorporates paragraphs 1 through 33 as if fully set forth herein.

35. Defendant owed an implied duty of good faith and fair dealing under Arizona law in the handling and payment of Plaintiff's insurance benefits claim.

36. Defendant acted unreasonably and with disregard of Plaintiff's rights by:

- Denying benefits without a reasonable basis;
- Fabricating claim dates;
- Failing to respond and investigate evidence of error;
- Concealing material information;
- Engaging in misleading, oppressive, and dishonest claims practices.

37. Defendant's conduct was intentional, malicious, and oppressive, warranting an award of punitive damages to deter future misconduct.

38. Plaintiff suffered harm including severe emotional distress, financial loss, and taxes on mental health as a direct and proximate consequence of Defendant's bad faith conduct.

**COUNT III: VIOLATION OF ARIZONA INSURANCE CODE AND REGULATIONS**

39. Plaintiff incorporates paragraphs 1 through 38 as if fully set forth herein.

40. Defendant engaged in unfair claims settlement practices in violation of Arizona Revised Statutes Title 20 and related administrative regulations, including but not limited to:

- Failure to promptly acknowledge and act upon communications;
- Failure to conduct reasonable and thorough investigations;
- Denial of claims without proper basis;
- Misrepresentations of policy provisions and claim status;
- Failure to timely respond to Plaintiff's efforts to resolve disputes.

41. These statutory violations entitle Plaintiff to declaratory relief, damages, penalties, and attorney fees as provided by applicable law.

**COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

42. Plaintiff incorporates paragraphs 1 through 41 as if fully set forth herein.

43. Defendant's conduct was extreme and outrageous, including repeated misrepresentation of Plaintiff's employment status, fabrication of critical claim records, denial of benefits essential to Plaintiff's livelihood, and disdainful dismissal of Plaintiff's valid concerns.

44. Defendant acted with the specific intent or reckless disregard to cause Plaintiff severe emotional distress.

45. As a direct result of Defendant's actions, Plaintiff has experienced significant mental anguish, anxiety, humiliation, and emotional trauma.

46. Plaintiff is entitled to damages for intentional infliction of emotional distress in an amount to be established at trial.

---

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A. Enter judgment against Defendant for compensatory damages in an amount to be proven at trial, including but not limited to unpaid benefits, consequential damages, and emotional distress;

B. Award punitive damages in the amount of One Hundred Million Dollars ($100,000,000), or such other amount deemed appropriate by the Court, to penalize and deter Defendant's egregious misconduct;

C. Issue injunctive relief directing Defendant to:

- Correct and expunge inaccurate and defamatory employment records;
- Reinstate Plaintiff's wrongfully denied benefits retroactively to the date of the improper termination;
- Implement appropriate compliance and oversight measures to prevent recurrence of such abuses;

D. Award pre-judgment and post-judgment interest at the maximum rates permitted by law;

E. Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in this action, pursuant to Arizona law and applicable statutes;

F. Grant such other and further relief as this Court may deem just, proper, and equitable.

---

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

---

## VIII. VERIFICATION

I, Dustin Heintzman, Plaintiff herein, declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of April, 2025.

**Respectfully submitted,**

---

Dustin Heintzman
Plaintiff, Pro Se
43106 N. 44th Dr.
Phoenix, AZ 85087
Phone: (480) 457-0939
Email: Dheintzman@gmail.com

---

## IX. LIST OF ATTACHED EXHIBITS

- **Exhibit A:** Denial letter containing offensive and unlawful qualification criteria for benefits, including references to suicidal, homicidal, or psychotic behavior.
- **Exhibit B:** Documented solutions proposed by Plaintiff to Lincoln Financial regarding certified medical leave extension.
- **Exhibit C:** Audio transcripts and recordings of communications with Lincoln Financial representatives (to be produced at trial and discovery).
- **Exhibit D:** Correspondence exchanged between Plaintiff and Lincoln Financial management and relevant regulatory agencies.
- **Exhibit F:** Closure notice of certified medical leave claim wrongfully stating Plaintiff is no longer an employee, contrary to fact.
- **Exhibit G:** Audio recordings, transcripts of communications with Wells Fargo personnel verifying Plaintiff's active authorized leave status and non-termination.

- **Exhibit H:** Voicemail from Andrew Tracy's manager indicating a purported investigation which was never completed or responded to, and Defendant's continued erroneous classification of Plaintiff's employment status.

---

Plaintiff reserves the right to amend this Complaint as discovery progresses, including the addition of further claims, parties, and allegations as warranted by the facts uncovered.

---

**END OF COMPLAINT**

Exhibit A

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (866) 213-2937
Secure Fax No.: (866) 214-7839

October 9, 2024

Dustin Heintzman
43106 N 44TH DR
PHOENIX, AZ 85087

RE: Short-Term Disability (STD) Benefits
Wells Fargo & Company
Claim #: 15683845

Dear Dustin:

The Lincoln National Life Insurance Company is responsible for managing claims for Short-Term Disability (STD) benefits under Wells Fargo & Company's Group Disability Plan. We are writing in reference to your claim for STD benefits under the Plan.

We have completed a thorough review of your eligibility for benefits and have determined that benefits are not payable beyond October 1, 2024. Wells Fargo & Company's STD Plan requires that to receive benefits you must meet the following definition of disability:

> ***Medically certified health condition***
>
> *For purposes of the STD Plan, a medically certified health condition is generally defined as a disabling injury or illness that:*
>
> - *Is documented by clinical evidence as provided and certified by an approved care provider. Clinical evidence may include medical records, medical test results, physical therapy notes, mental health records, and prescription records.*
>
> - *Prevents you from performing the essential functions of your own job as regularly scheduled for longer than the STD waiting period.*

You have been receiving STD benefits for your disability since May 9, 2024.

In order to evaluate whether or not you continued to meet the above definition of disability, we requested medical information from your physician(s).

You submitted a claim for generalized anxiety disorder and your claim file contains the following

medical documentation:

- Health care provider form completed by Mark Lewis, MD on September 19, 2024.
- Treating provider statement completed by Mark Lewis, MD on September 19, 2024.
- Patient Care Summary dated September 20, 2024 from Mark Lewis, MD
- Progress notes dated September 16, 2024 and September 18, 2024 from Marlena Gonzales-Gabaldon, Dbh, Lpc
- Questionnaire response dated October 3, 2024 from Marlena Gonzales-Gabaldon, Dbh, Lpc

The medical documentation was referred to our clinical team for review and the findings are as follows:

*"While there are reported symptoms, it is unclear if the symptoms impair ability to complete day to day tasks and activities. It is also unclear what the current symptoms are as Dr. Lewis provides information similar to that previously provided and the office visit summary dated September 20, 2024, provides no symptom description. It is unclear if there has been any recent improvement or progress in treatment. Additionally, it is unclear how frequently treatment with Dr Gonzalez-Gabaldon occurs, as there are limited office visit notes available to review. Due to these reasons, the behavioral health consultant contacted both Dr. Lewis and AP Gonzalez-Gabaldon to clarify psychiatric restrictions, limitations, and duration beyond October 1, 2024.*

*The medical available at the time of the final review does not support the presence of psychiatric restrictions or limitations from October 2, 2024, onward. While there are reported symptoms, the intensity of care is not consistent with a debilitating mental illness. While three-time weekly psychotherapy treatment with Dr Gonzalez-Gabaldon continues there is no evidence of escalation of care such as a referral to psychiatry for medication evaluation or a transition to a more intense level of care for functional impairment, which is not consistent with treatment expected of someone experiencing severe psychiatric symptoms. There is no suicidal or homicidal ideation and no evidence of psychosis. There was no required treatment at higher levels of care such as inpatient therapy, partial hospitalization programs or intensive outpatient programs. Therefore, the symptoms, along with the level and intensity of care, are not consistent with a severely impairing psychiatric condition that would prevent you from performing the essential functions of your job."*

Based on the medical documentation received in relation to the requirements of your job, you no longer meet the definition of disability outlined above. Thus benefits are no longer payable and we must close your claim.

Any pending application(s) for benefits that are considered an offset under the disability Plan continue to be applicable to your claim. If benefits are awarded retroactive to your period of disability with The Lincoln National Life Insurance Company, you are expected to repay the amount of any other benefit you would have received during the time period that you received disability per the language of the disability Plan. Should The Lincoln National Life Insurance Company receive notification of any such award, a representative from our Financial Review Services will notify you regarding any repayment due.

In order to be on an approved leave of absence, your health care provider must complete the Certification of Health Care Provider Form. Please fax this completed form to the Leave of Absence Team at 866-214-7839 or email to wellsfargo@lfg.com as soon as possible.

This claim determination reflects an evaluation of the claim facts and the Plan provisions. No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination. We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

The Lincoln National Life Insurance Company
Attn: Appeal Review Unit
Group Benefits Disability Claims
P.O. Box 2578
Omaha, NE 68103-2578

The written request for review must be sent within 180 days from the receipt of this letter and state the reasons you feel your claim should not have been denied. In your request for review please include the following documentation:

Hospital records, discharge summaries, exam findings, office visit notes, mental status exam findings, mental status testing, psychology notes, psychiatry notes, counselor notes, therapy records, referrals, consultations, restrictions, limitations, treatment plans, and any other medical information,

You should also provide any additional information that you feel will support your claim.

You are entitled to receive, upon request and free of charge, copies of all claim file documents relevant to the claim determination. If Lincoln Financial Group does not receive your written request for review within 180 days from the receipt of this notice, our claim decision will be final, your file will remain closed, and no further review will be conducted.

Under normal circumstances, you will be notified of the final decision within 45 days from the date your request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang

gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, you will be notified of the final decision no later than 90 days from the date your request is received.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Plan, and all of these rights and defenses are reserved by Lincoln Financial Group, whether or not they are specifically mentioned herein.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information.

"Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

If you have any questions regarding this matter, please contact me.

Sincerely,

Tracy R.
Integrated Case Manager
Phone No.: (866) 213-2937 Ext. 14766
Secure Fax No.: (866) 214-7839

Exhibit B

# FAX RECEIPT

| | |
|---|---|
| To | **+1 (866) 214-7839** |
| From | +1 (681) 310-0710 |
| Sent | 12/1/24, 9:36 pm |
| Delivered | 12/1/24, 9:38 pm |
| Pages | 2 |





**DELIVERED**

Delivered with
Fax App by Municorn Ltd.
Date: 12/1/24

# FAX RECEIPT

| | |
|---|---|
| To | **+1 (866) 214-7839** |
| From | +1 (681) 310-0710 |
| Sent | 4/4/25, 2:40 pm |
| Delivered | 4/4/25, 2:44 pm |
| Pages | 8 |



**DELIVERED**

Delivered with
Fax App by Municorn Ltd.
Date: 4/4/25

# FAX RECEIPT

| | |
|---|---|
| To | **+1 (866) 214-7839** |
| From | +1 (681) 310-0710 |
| Sent | 1/31/25, 9:56 pm |
| Delivered | 1/31/25, 10:00 pm |
| Pages | 8 |









**DELIVERED**

Delivered with
Fax App by Municorn Ltd.
Date: 1/31/25

Lincoln Financial Group®

Lincoln Financial Group
Leave Service Department
PO Box 49410
Charlotte, NC 28277

February 5, 2025

DUSTIN HEINTZMAN
43106 N 44TH DR
PHOENIX, AZ 85087-0000

RE: Wells Fargo & Company
Leave Extension Approval
Leave ID#: 15907490

| | |
|---|---|
| ***Why You and Your Manager Are Receiving This Notice*** | Your request to extend your leave for Certified Medical Leave has been approved from **July 25, 2024** to **April 5, 2026.**<br><br>**Managers, please be sure to read this letter and refer to the important Manager Information section below for next steps.** |
| ***What You Need to Know*** | Your leave request has been extended. |
| ***What You Need to Do*** | **If you are able to return to work at the end of the current leave period:**<br><br>**Contact** your manager five (5) business days prior to April 5, 2026 and schedule your return to work, to ensure system access is activated and you are paid timely after your return.<br><br>**Provide** Lincoln Financial Group with a release to return to work note from your health care provider, if returning from your own health condition. Do not give your return to work note/release or other medical information to your manager. |
| ***What Happens Next*** | You will receive status updates throughout the course of your absence.<br><br>Please follow all instructions to ensure timely administration of your leave. |
| ***Questions*** | If you have any questions, contact your Lincoln Financial Group representative using the information provided below.<br><br>You may also access https://www.lincolnfinancial.com, or to check the status of your request. First time users will need to create a login using the Company Code "Wells." |

| | |
|---|---|
| ***Manager Information*** | You are receiving a copy of this letter to update you on the status of your employee's leave.<br><br>***What you need to do:***<br>**Review and complete applicable action items outlined in Managers: Leave of Absence Guide article in HR Services & Support.** You can either use the search function in HR Services & Support or go to HR Services & Support, use the HR Information tab at the top of the page, go to time and absence on the left-hand navigation bar, then go to leave of absence on left-hand navigation bar and locate article entitled Managers: Leave of Absence Guide.<br><br>***What you need to know:***<br>Lincoln Financial Group will continue to provide updates on any status changes throughout your employee's leave.<br><br>Review all communications related to your employee's leave and perform any actions as requested as soon as possible.<br><br>If you have any questions, contact the Lincoln Financial Group representative using the information provided in the signature line below.<br><br>**DO NOT** TAKE ANY CORRECTIVE ACTION OR REPLACE THE EMPLOYEE'S POSITION UNTIL CONSULTING WITH ER SOLUTIONS FIRST.<br>Complete the Employee Relations eform to request the consultation. |

Sincerely,

TRACY R
Office Phone: (866) 213-2937 Ext. 14766
Office Fax: 866-214-7839
Email: wellsfargo@lfg.com

Attachments: Medical Leave Guide for Team Members

**Exhibit C**

Exhibit D

Exhibit F

Lincoln Financial Group®

Lincoln Financial Group
Leave Service Department
PO Box 49410
Charlotte, NC 28277

April 7, 2025

DUSTIN HEINTZMAN
43106 N 44TH DR
PHOENIX, AZ 85087-0000

RE: Wells Fargo & Company
Leave Closure
Leave ID#: 15907490

| | |
|---|---|
| ***Why You and Your Manager Are Receiving This Notice*** | Your Certified Medical Leave was closed because our records indicate that you are no longer a Wells Fargo employee.<br><br>**Managers, please be sure to read this letter and refer to the important Manager Information section below for next steps.** |
| ***Questions*** | If you have any questions regarding your employment status, contact the Wells Fargo Employee Relations at 1-877-HRWELLS (1-877-479-3557), option 3. |
| ***Manager Information*** | You are receiving a copy of this letter to update you on the status of your employee's leave.<br><br>***What you need to do:***<br>**Review and complete applicable action items outlined in Managers: Leave of Absence Guide article in HR Services & Support.** You can either use the search function in HR Services & Support or go to HR Services & Support, use the HR Information tab at the top of the page, go to time and absence on the left-hand navigation bar, then go to leave of absence on left-hand navigation bar and locate article entitled Managers: Leave of Absence Guide.<br><br>***What you need to know:***<br>Lincoln Financial Group will continue to provide updates on any status changes throughout your employee's leave.<br><br>Review all communications related to your employee's leave and perform any actions as requested as soon as possible.<br><br>If you have any questions, contact the Lincoln Financial Group representative using the information provided in the signature line below. |

Sincerely,

TRACY R
Office Phone: (866) 213-2937 Ext. 14766
Office Fax: 866-214-7839
Email: wellsfargo@lfg.com

Exhibit G

Exhibit H

10:23 29

< Voicemail

**Lincoln financial**
phone
April 9, 2025 at 3:11 PM

0:00 -1:37

Transcription

"Hi this message for Dustin Heinsman Andrew from Lincoln financial group calling in regards to leave number 1590-7490 I got notification that you had escalated in regards to your lead being closed out due to an employment termination status I can explain the logic behind it on our end so the leave automatically closes out for employment terminated the reason why I was for yours is because every day we receive what's called an eligibility file from Wells Fargo and what that detail details is your eligibility status for any kind of benefits starting for eight your eligibility file came over as deleted saying that you don't have an eligibility file to the system automatically changes your status to terminated at that point normal processes for a terminated employee the eligibility will continue to come over and I will list the status as terminated so what we're doing is we've reached out to Wells Fargo today to their team to confirm your employment status with them once we have additional information from them will be able to provide you with an update but this is based on the eligibility file that was sent over from your employer if you have any additional questions you can reach back out to me 866-213-2937 stitches 19097 I'll follow up once we have confirmation from them on the appropriate status thank you have a good day..."

Was this transcription useful or not useful?

35

Voicemail

# EXHIBIT E

**In the Superior Court of the State of Arizona**
**In and for the County of** Maricopa County

Case Number CV2025-014346

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney Dustin Heintzman

Attorney Bar Number ____________

**Is Interpreter Needed?** [ ] **Yes** [X] **No**

**If yes, what language(s):** ____________

CLERK OF THE SUPERIOR COURT FILED 25 APR 23 AM 10:4 O. PEREZ DOMINGUEZ DEP

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Dustin Heintzman | 43106 N. 44th Dr. PHX AZ 85087 | 480-457-0939 | Dheintzman@ Gmall.com |

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)
Lincoln financial

(List additional Defendants on page two and/or attach a separate sheet)

**RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:**

**IMPORTANT: Any case category that has an asterisk (*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

[X] Amount Claimed $ 100,000,000 [ ] Tier 1 [ ] Tier 2 [X] Tier 3

**NATURE OF ACTION**

Place an "X" next to the one case category that most accurately describes your primary case. **Any case category that has an asterisk (*) MUST have a dollar amount claimed or Tier selected as indicated above.**

**100 TORT MOTOR VEHICLE:**

[ ] 101 Non-Death/Personal Injury*
[ ] 102 Property Damage*
[ ] 103 Wrongful Death*

**110 TORT NON-MOTOR VEHICLE:**

[ ] 111 Negligence*
[ ] 112 Product Liability – Asbestos*
[ ] 112 Product Liability – Tobacco*
[ ] 112 Product Liability – Toxic/Other*
[ ] 113 Intentional Tort*

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case No: ____________________

☐114 Property Damage*
☐115 Legal Malpractice*
☐115 Malpractice – Other professional*
☐117 Premises Liability*
☐118 Slander/Libel/Defamation*
☐119 Recovery of Damages under A.R.S. §12-514* (Please provide Plaintiff DOB ___/____/_________)
☐ 116 Other (Specify) _______________*

**120 MEDICAL MALPRACTICE:**

☐121 Physician M.D.* ☐123 Hospital*
☐122 Physician D.O* ☐124 Other*

**130 & 197 CONTRACTS:**

☐131 Account (Open or Stated)*
☐132 Promissory Note*
☐133 Foreclosure*
☐138 Buyer-Plaintiff*
☒139 Fraud*
☒134 Other Contract (e.g., Breach of Contract)*
☐135 Excess Proceeds-Sale*
☐ Construction Defects (Residential/Commercial)*
☐136 Six to Nineteen Structures*
☐137 Twenty or More Structures*
☐197 Credit Card Debt (Maricopa County Filings Only)*

**145 & 150-199 OTHER CIVIL CASE TYPES:**

☐156 Eminent Domain/Condemnation*
☐151 Eviction Actions (Forcible and Special Detainers)*
☐152 Change of Name
☐153 Transcript of Judgment
☐154 Foreign Judgment
☐158 Quiet Title*
☐160 Forfeiture*
☐175 Election Challenge
☐179 NCC-Employer Sanction Action (A.R.S. §23-212)*
☐180 Injunction against Workplace Harassment
☐181 Injunction against Harassment
☐182 Civil Penalty
☐186 Water Rights (Not General Stream Adjudication)*
☐187 Real Property *
☐145 Special Action
☐194 Immigration Enforcement Challenge (A.R.S. §§1-501, 1-502, 11-1051)
☐199 Expungement
☐202 Out of State Restoration of Civil Rights
☐201 Seal Criminal Case Records (A.R.S. §13-911)

**144 & 150-199 UNCLASSIFIED CIVIL:**

☐Administrative Review
(See Lower Court Appeals cover sheet in Maricopa)
☐150 Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)
☐155 Declaratory Judgment
☐157 Habeas Corpus
☐184 Landlord Tenant Dispute – Other*
☐190 Declaration of Factual Innocence (A.R.S. §12-771)
☐191 Declaration of Factual Improper Party Status
☐193 Vulnerable Adult (A.R.S. §46-451)*
☐165 Tribal Judgment
☐167 Structured Settlement (A.R.S. §12-2901)
☐169 Attorney Conservatorships (State Bar)
☐170 Unauthorized Practice of Law (State Bar)
☐171 Out-of-State Deposition for Foreign Jurisdiction

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

☐ 114 Property Damage*
☐ 115 Legal Malpractice*
☐ 115 Malpractice – Other professional*
☐ 117 Premises Liability*
☐ 118 Slander/Libel/Defamation*
☐ 119 Recovery of Damages under A.R.S. §12-514* (Please provide Plaintiff DOB ___/___/_______)
☐ 116 Other (Specify) ______________*

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.*
☐ 122 Physician D.O*
☐ 123 Hospital*
☐ 124 Other*

**130 & 197 CONTRACTS:**

☐ 131 Account (Open or Stated)*
☐ 132 Promissory Note*
☐ 133 Foreclosure*
☐ 138 Buyer-Plaintiff*
☒ 139 Fraud*
☒ 134 Other Contract (e.g., Breach of Contract)*
☐ 135 Excess Proceeds-Sale*
☐ Construction Defects (Residential/Commercial)*
☐ 136 Six to Nineteen Structures*
☐ 137 Twenty or More Structures*
☐ 197 Credit Card Debt (Maricopa County Filings Only)*

**145 & 150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation*
☐ 151 Eviction Actions (Forcible and Special Detainers)*
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title*
☐ 160 Forfeiture*
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)*
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)*
☐ 187 Real Property *
☐ 145 Special Action
☐ 194 Immigration Enforcement Challenge (A.R.S. §§1-501, 1-502, 11-1051)
☐ 199 Expungement
☐ 202 Out of State Restoration of Civil Rights
☐ 201 Seal Criminal Case Records (A.R.S. §13-911)

**144 & 150-199 UNCLASSIFIED CIVIL:**

☐ Administrative Review (See Lower Court Appeals cover sheet in Maricopa)
☐ 150 Tax Appeal (All other tax matters must be filed in the AZ Tax Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute – Other*
☐ 190 Declaration of Factual Innocence (A.R.S. §12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)*
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction

Case No: ____________

☐172 Secure Attendance of Prisoner
☐173 Assurance of Discontinuance
☐174 In-State Deposition for Foreign Jurisdiction
☐176 Eminent Domain– Light Rail Only*
☐177 Interpleader– Automobile Only*
☐178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐183 Employment Dispute – Discrimination*
☐185 Employment Dispute – Other*
☐198 Verified Rule 27(a) Petition*
☐196 Verified Rule 45.2 Petition
☐195(a) Amendment of Marriage License (Maricopa County Filings Only)
☐195(b) Amendment of Birth Certificate
☐200 Application/Motion Objecting to Foreign Subpoena
☐163 Other* ____________________
(Specify)

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order ☐ Provisional Remedy ☐ OSC ☐ Election Challenge
☐ Employer Sanction ☐ Other (Specify) ____________________

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the Commercial Court. More information on the Commercial Court, including the most recent forms, are available on the Court's website at: https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

~~Tra~~

**Additional Defendant(s):**

Tracy R, Andrew W, Michael Senior leader of individuals at Lincoln financial listed

# EXHIBIT F

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44th Dr
City, State, Zip Code: Phoenix AZ 85087
Telephone: 4804570939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number: ____________
Representing ☐ Self, without a Lawyer or ☐ Attorney for ☐ Plaintiff OR ☐ Defendant

COPY
APR 2 3 2025
CLERK OF THE SUPERIOR COURT
O. PEREZ DOMINGUEZ
DEPUTY CLERK
FOR CLERK'S USE ONLY

# SUPERIOR COURT OF ARIZONA IN MARICOPA COUNTY

Dustin Heintzman
PLAINTIFF,

vs.

Lincoln financial
DEFENDANT.

Case Number: CV2025-014346

## CERTIFICATE OF COMPULSORY ARBITRATION

***Notice to Defendant: If you agree with the Plaintiff's Certificate of Compulsory Arbitration, you DO NOT need to file this form.**

The undersigned certifies that this case is (Please check **ONLY** one option below):

☐ **Subject to Arbitration** – The amount of money in controversy **DOES NOT** exceed $50,000, **AND** no other affirmative relief is sought.

☒ **Not Subject to Arbitration** – The amount of money in controversy **DOES** exceed $50,000, **OR** other affirmative relief is sought.

*Defendant – If you DISAGREE with the Plaintiff's Certificate of Compulsory Arbitration, please explain why you disagree below:

______________________________
______________________________
______________________________

SUBMITTED this ________ day of ____________, 20______.

SIGNATURE ____________________

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

# EXHIBIT G

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44th Dr
City, State, Zip Code: Phoenix AZ 85087
Telephone: 4804570939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number:

Representing [X] Self, without a Lawyer or [ ] Attorney for [ ] Plaintiff OR [ ] Defendant

COPY

APR 23 2025

CLERK OF THE SUPERIOR COURT
O. PEREZ DOMINGUEZ
DEPUTY CLERK

COURT SEAL

# SUPERIOR COURT OF ARIZONA IN MARICOPA COUNTY

Dustin Heintzman
Name of Plaintiff

Lincoln financial
Name of Defendant

Case Number: CV2025-014346

Title: **PLAINTIFF'S DEMAND for JURY TRIAL**

Plaintiff, Dustin Heintzman (Name of Plaintiff), demands a trial by jury in this case. If this case is sent to compulsory arbitration, Plaintiff demands a trial by jury if there is an appeal from that compulsory arbitration.

Dated this 4/23/25
(Date of signature)

(Signature of Plaintiff or Plaintiff's Attorney)

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED



CVC11f 050718

# EXHIBIT H

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44TH DR
City, State, Zip Code: Phx AZ 85087
Telephone: 480-457-0939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number: ______
Representing ☑ Self, without a Lawyer OR ☐ Attorney for ☐ Petitioner OR ☐ Respondent

CLERK OF THE SUPERIOR COURT
FILED
04/23/2025 10:46am
O. Perez Dominguez, Deputy
For Clerk's Use Only

SUPERIOR COURT OF ARIZONA
IN MARICOPA COUNTY

Dustin Heintzman
Name of Petitioner / Plaintiff

Lincoln Financial
Name of Respondent / Defendant

Case Number: CV2025-014346

APPLICATION FOR DEFERRAL OR WAIVER OF COURT FEES OR COSTS AND CONSENT TO ENTRY OF JUDGMENT

**Notice**

- A Fee Deferral is only a temporary postponement of the payment of the fees due. You may be required to make payments depending on your income.
- A Fee Waiver is usually permanent unless your financial circumstances change during the course of this court action.
- You must attach the required proof when filing your Application. If you do not attach the required proof, you must complete the financial questionnaire in section 3.
- In the Application, "I" and "you" refer to either the "Applicant" (in all case types, except for probate) or the "Estate/Ward/Protected Person" (in probate cases).

1. I cannot pay the following fees and costs in my case:

☒ Any or all filing fees, fees for the issuance of either a summons or subpoena, the cost of attendance at an educational program for divorce and legal separation cases required by A.R.S. § 25-352, court accountant fees and costs, court investigator fees and costs, fees for obtaining one certified copy of letters of temporary or permanent appointment, fees for obtaining one certified copy of a temporary order in a family court case or a final order, judgment, or decree in all civil proceedings.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

GNDW11f 013125

Case Number: ________________

- [X] Fees for service of process by a sheriff, marshal, constable, or law enforcement agency.*
- [ ] Fees for service by publication.*
- [X] Filing fees and photocopy fees for the preparation of the record on appeal.
- [X] Court reporter or transcriber fees for the preparation of court transcripts, if the court reporter or transcriber is employed by the court.

*Note: To defer or waive fees for service of process or for service by publication, you must also complete the Affidavit in Support of Application for Deferral or Waiver of Service of Process Fee form (Form No. GNDW21f).

2. I am requesting a deferral or waiver of fees and costs in my case because:

A. [ ] I receive government assistance from the federal Supplemental Security Income (SSI) program. *

[ ] I have attached the required proof that I participate in the Supplemental Security Income program. The proof shows my name as the benefit's recipient and the name of the agency that provides the benefit.

STOP (If you have attached proof, you do not need to complete the financial questionnaire in section 3.)

*Supplemental Security Income (SSI) is not the same as regular retirement benefit from the Social Security Administration or Social Security Disability Insurance (SSDI

Or

B. [ ] I receive government assistance from the state or federal program marked below:

- [ ] Temporary Assistance to Needy Families (TANF)
- [ ] Food Stamps

[ ] I have attached the required proof that I participate in a government assistance program. The proof shows my name as the benefit's recipient and the name of the agency that provides the benefit.

STOP (If you have attached proof, you do not need to complete the financial questionnaire in section 3.)

Or

C. [ ] I receive legal assistance from a non-profit legal aid program.

Case Number: ____________________

☐ I have attached the required proof that I receive legal assistance from a <u>non-profit legal aid program</u>. The proof shows <u>my name as the recipient</u> and the <u>name of the legal aid provider that provides the assistance</u>.

STOP (If you have attached proof, you do not need to complete the financial questionnaire in section 3.)

Or

D. ☒ My income is insufficient or is barely sufficient to meet the daily essentials of life, and includes no allotment that could be budgeted for the fees and costs that are required to gain access to the court. My gross income as computed on a monthly basis is 150% or less of the current federal poverty level. (Note: Gross monthly income includes your share of your spouse or domestic partner's income if available to you.) (See the Poverty Levels Chart in 4(H) to determine if your income is 150% or less of the poverty level.)

Or

E. ☒ I am permanently unable to pay. My income and liquid assets are insufficient or barely sufficient to meet the daily essentials of life <u>and are unlikely to change in the foreseeable future</u>.

Or

F. ☐ I do not have the money to pay court filing fees and costs now. I can pay the filing fees and costs at a later date. Explain. ________________________________

Or

G. ☐ My income is greater than 150% of the poverty level, but I have proof of extraordinary expenses (including medical expenses and costs of care for elderly or disabled family members) or other expenses that reduce my gross monthly income to 150% or below the poverty level. (See the Poverty Levels Chart in 4(H) to determine if your income is 150% or less of the poverty level.)

| Description of extraordinary expenses | Amount |
|---|---|
| ______________________________ | $________ |
| ______________________________ | $________ |
| ______________________________ | $________ |
| Total extraordinary expenses | $________ |


© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ____________

H. Poverty levels chart. The chart below lists the gross monthly income levels at 150% of the current federal poverty levels based on household size. Household size is the number of related individuals living in your home, including yourself, that you support financially. Use the chart to determine the poverty levels based on your household size and whether your gross monthly income is less than, or more than, 150% of the poverty levels.

| As of January 17, 2025 | | | |
|---|---|---|---|
| Household Size (all related individuals) | Gross Monthly Income Level – 150% | Household Size (all related individuals) | Gross Monthly Income Level – 150% |
| 1 | $1,956 | 5 | $4,706 |
| 2 | $2,644 | 6 | $5,394 |
| 3 | $3,331 | 7 | $6,081 |
| 4 | $4,019 | 8* | $6,769 |

3. Financial questionnaire

You must complete the financial questionnaire unless you have attached the proof required in section 2(A) for SSI, 2(B) for government assistance, or 2(C) for non-profit legal aid program.

A. How many people, including yourself, do you support financially (including those you pay child support or spousal maintenance for)? 3

List relationship of those you support and check those living with you:

☒ Beckham Heiteman ☐ ____ ☐ ____
☒ Bella Barney Heitzman ☐ ____ ☐ ____
☐ ____ ☐ ____

B. Do you have a job? ☐ Yes ☒ No

Employer name: ____________

Employer phone number: ____________

C. What is your approximate gross monthly income (total income before deductions)? $____

D. What is your approximate monthly take home pay (total income after deductions)? $ 240.00

Case Number: ____________________

E. Do you have income from the following sources?

- [ ] social security
- [ ] disability
- [ ] veteran's benefits
- [ ] unemployment benefits
- [x] spousal or child support
- [ ] investments
- [ ] other: ____________________

- What is your approximate total gross monthly income from these sources? $ 0

- What is your spouse or domestic partner's approximate total gross monthly income from all sources readily available to you? $ 0

F. What is the approximate total balance of bank and credit union accounts accessible without financial penalty? $ 0

G. What are your average total monthly expenses, including rent/mortgage, utilities, vehicle/transportation, credit cards, insurance, medical/dental, child support, childcare, spousal maintenance, tuition, or other expenses? $ 0

## CONSENT TO ENTRY OF JUDGMENT

By signing this Application, I agree that a consent judgment may be entered against me for all fees or costs that are deferred but remain unpaid 30 calendar days after entry of the final judgment, decree, or order unless I establish a payment plan and make timely payments, or I submit a Supplemental Application and the court has not made a ruling on it.

You will receive a Notice of Court Fees and Costs Due from the court indicating (1) how much is owed and (2) what steps to take to avoid a consent judgment against you.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ____________________

> Note: You may be ordered to repay any amounts that were waived if the court finds you were not eligible for the fee deferral or waiver. If your case is dismissed for any reason, the fees and costs are still due.

If you are asking for deferral or waiver for <u>service of process costs</u>, or <u>service by publication costs</u>, you must complete the Affidavit in Support of Application for Deferral or Waiver of Service of Process Fee form (Form No. GNDW21f).

## OATH OR AFFIRMATION FOR APPLICATION FOR DEFERRAL OR WAIVER OF COURT FEES AND COSTS

I declare under penalty of perjury that I have read the above statements and to the best of my knowledge and belief these statements are true and correct.

4/22/25
Date

[signature]
Applicant's Signature

Justin Heintzman
Applicant's Printed Name

# EXHIBIT I

Person Filing: Dustin Heintzman
Address (if not protected): 43106 N 44TH Dr
City, State, Zip Code: Phx AZ 85087
Telephone: 480-457-0939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number: ____________
Representing [X] Self, without a Lawyer OR [ ] Attorney for [ ] Petitioner OR [ ] Respondent

CLERK OF THE SUPERIOR COURT
FILED
04/23/2025 10:46am
C. Perez Dominguez, Deputy
For Clerk's Use Only

SUPERIOR COURT OF ARIZONA
IN MARICOPA COUNTY

Dustin Heintzman
Name of Petitioner / Plaintiff

Case Number: CV2025-014346

Lincoln Financial
Name of Respondent / Respondent

AFFIDAVIT IN SUPPORT OF APPLICATION FOR DEFERRAL OR WAIVER OF SERVICE OF PROCESS FEE

| Notice |
| --- |
| • A Fee Deferral is only a temporary postponement of the payment of the fees due. You may be required to make payments depending on your income. |
| • A Fee Waiver is usually permanent unless your financial circumstances change during the course of this court action. |

1. I have requested a deferral or waiver of the following fees in my case:
   A. [X] Fees for service of process by a sheriff, marshal, constable, or law enforcement agency.

   In support of my request, I state that (check one box):

   [ ] I have attempted to obtain voluntary acceptance of service of process without success on the person to be served.

   [ ] It would be useless or dangerous for me to try to obtain voluntary acceptance of service by the person to be served because (explain):

   ____________________________________________

   ____________________________________________

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

GNDW21f-090622

Case Number:____________________

☐ An enforceable Injunction Against Harassment has been granted to me against the person to be served.

B. ☐ Fees for publication.

In support of my request, I state that I have attempted to locate the person to be served but I have been unable to locate that person (check and complete any that apply):

☐ This is what I did to try to find the other party (explain):

____________________________________________

____________________________________________

☐ I have contacted the person(s) listed below to try to find the location of the other party.

Name: ________________________________________
Address: ______________________________________

Name: ________________________________________
Address: ______________________________________

## OATH OR AFFIRMATION FOR AFFIDAVIT IN SUPPORT OF APPLICATION FOR DEFERRAL OR WAIVER OF SERVICE OF PROCESS FEE

I declare under penalty of perjury that I have read the above statements and to the best of my knowledge and belief these statements are true and correct.

4/22/25
Date

[signature]
Applicant's Signature

Dustin Heintzman
Applicant's Printed Name

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ____________________

## INFORMATION FOR SERVICE

**You must provide the following information:**

To the best of my knowledge, the last known address of the person to be served is:

Statutory Agent for Lincoln Financial

Corporation Service Company Suite 102

7955 S Priest Dr Tempe AZ 85284

as of 4/22/25.
[insert date]

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

# EXHIBIT J

CLERK OF THE
SUPERIOR COURT
FILED
D. PEREZ DOMINGUEZ, DEP

25 APR 23 AM 10:46

For Clerk's Use Only

Person Filing: Dustin Heintzman
Address (if not protected): 4310 N 44th Dr
City, State, Zip Code: Phx AZ 85087
Telephone: 480-457-0939
Email Address: dheintzman@gmail.com
Lawyer's Bar Number:
Representing ☒ Self, without a Lawyer OR ☐ Attorney for ☐ Petitioner OR ☐ Respondent

SUPERIOR COURT OF ARIZONA
IN MARICOPA COUNTY

Dustin Heintzman
Name of Petitioner / Plaintiff

Lincoln Financial
Name of Respondent / Defendant

Case Number: CV2025-014346

ORDER REGARDING DEFERRAL OR WAIVER OF COURT FEES AND COSTS

THE COURT FINDS that the applicant or estate/ward/protected person, Dustin Heintzman (print name):

1. ☐ Is not eligible for a deferral or for a waiver of fees and costs.

Or

2. ☐ Is eligible for a deferral of fees and costs based on:

☐ Financial eligibility. As required by state law, the applicant has signed a consent to entry of judgment.

☐ At the court's discretion (A.R.S. § 12-302(L)).

☐ Good cause shown. As required by state law, the applicant has signed a consent to entry of judgment.

Or

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

GNDW18f-090622

Case Number: ____________________

3. ☒ Is eligible for a waiver of fees and costs based on:

☒ Applicant is permanently unable to pay.

☐ At the court's discretion (A.R.S. § 12-302(L)).

IT IS ORDERED:

☐ Waiver is denied for the following reasons:

☐ This is a class action. (A.R.S. § 12-302(K))

☐ The applicant is an ADOC inmate awaiting transportation to ADOC facilities or a non-ADOC inmate, and this is not a domestic relations action. (A.R.S. § 12-302(K))

☐ The applicant was previously declared a vexatious litigant by any court, and this is not a domestic relations case. (A.R.S. § 12-302(K))

☐ The applicant is not permanently unable to pay or the applicant has not established a receipt of benefits from the Supplemental Security Income (SSI) program. (ACJA § 5-206(F))

☒ Waiver is granted for the following fees and costs in this case that may be waived under A.R.S. § 12-302(H):

☒ Any or all filing fees, fees for the issuance of either a summons or subpoena, the cost of attendance at an educational program required by A.R.S. § 25-352, court accountant fees and costs, court investigator fees and costs, fees for obtaining one certified copy of letters of temporary or permanent appointment, and fees for obtaining one certified copy of a temporary order in a family court case or a final order, judgment, or decree in all civil proceedings.

☒ Fees for service of process by a sheriff, marshal, constable, or law enforcement agency.

☐ Fees for service by publication.

☐ Filing fees and photocopy fees for the preparation of the record on appeal.

☐ Court reporter or transcriber fees for the preparation of court transcripts, if the court reporter or transcriber is employed by the court.

☐ Deferral is denied for the following reason(s):

☐ The application is incomplete because ____________________________________

Case Number: ____________________

You are encouraged to submit a complete application.

☐ The applicant does not meet the financial criteria for deferral because:

☐ The applicant did not provide proof that they are receiving public assistance benefits from the Temporary Assistance to Needy Families (TANF) program or Food Stamps;

☐ The applicant did not provide documentation that they are currently receiving services from a non-profit legal aid program;

☐ The applicant did not provide documentation that their income is insufficient or barely sufficient to meet the daily essentials of life and includes no allotment that could be budgeted to pay the fees and costs necessary to gain access to the court;

☐ Other reason: ____________________________________________
____________________________________________
____________________________________________

☐ The applicant is an incarcerated felon, and this is not a domestic relations action. (A.R.S. § 12-302(E))

☐ Deferral is granted for the following fees and costs in this court:

☐ Any or all filing fees, fees for the issuance of either a summons or subpoena, the cost of attendance at an educational program required by A.R.S. § 25-352, court accountant fees and costs, court investigator fees and costs, fees for obtaining one certified copy of letters of temporary or permanent appointment, and fees for obtaining one certified copy of a temporary order in a family court case or a final order, judgment, or decree in all civil proceedings.

☐ Fees for service of process by a sheriff, marshal, constable, or law enforcement agency.

☐ Fees for service by publication.

☐ Filing fees and photocopy fees for the preparation of the record on appeal.

☐ Court reporter or transcriber fees for the preparation of court transcripts, if the court reporter or transcriber is employed by the court.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ____________________

<u>If a deferral is granted, applicant must pay as follows</u>:

☐ No payments will be due until further notice or at the conclusion of your case.

☐ Payment plan. The applicant must pay $______________ each ___________ (week, month etc.) until paid in full, beginning ________________.

☐ Payment due date. The applicant must pay the service of process fee of $_______________ on or before ________________.

<u>Right to judicial review.</u> If the court denies your application or sets a payment plan for you, you may request a judicial officer to review the decision by filing a <u>Request and Order for Hearing</u>. You must file the request within 20 days of the day the order was mailed or delivered to you. If the court sets a payment plan for you, no payments will be due until the court reviews the request. The court will review the request as soon as reasonably possible.

If you do not pay the service of process fees when they are due, you will receive a <u>Notice of Court Fees and Costs Due</u>. The Notice of Court Fees and Costs Due will remind you that you may submit a Supplemental Application (Form No. GNDW92f) for further deferral or waiver if you believe you still cannot afford to pay your court fees. The court will review your <u>Supplemental Application</u> and decide at that time whether or not you must pay.

<u>Notice regarding consent judgment.</u> A consent judgment may be entered against you for all fees or costs that are deferred but remain unpaid 30 calendar days after entry of the final judgment, decree, or order <u>unless</u>:

A. The fees and costs are taxed to another party.

B. You establish a payment plan and make timely payments.

C. You file a Supplemental Application, and the court has not made a ruling on it.

D. In response to the Supplemental Application, the court orders the fees and costs to be waived or further deferred.

E. Within 20 days of the date the court denies the Supplemental Application,

- o You pay the fees and costs.
- o You request a hearing. The court cannot enter the consent judgment unless a hearing is held, further deferral or waiver is denied, and payment has not been made within the time given by the court.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Case Number: ______________

If you appeal the final order, decree, or judgment, unpaid court fees are due 30 days after the appeals process ends. The procedures for notice of court fees and costs and for entry of a consent judgment continue to apply.

<u>Duty to report change in financial circumstances.</u>
An applicant who is granted a deferral or waiver must promptly notify the court of any change in financial circumstances during the course of the case that would affect the applicant's ability to pay court fees and costs. Any time the applicant appears before the court on this case, the court may inquire as to the applicant's financial circumstances.

Dated: 4/22/2025

[signature]
☒ Judicial Officer ☐ Special Commissioner

Note: if the application is by verbal avowal, the applicant must sign the consent on the next page.

I CERTIFY that I mailed/delivered a copy of this document to: File counter
☐ Applicant ☐ at the above address, ☐ in court, ☒ hand delivered, ☐ by email
☐ Applicant's attorney ☐ at the above address, ☐ in court, ☐ hand delivered, ☐ by email

APR 23 2025
Date

By [signature]
Clerk of Superior Court
Deputy Clerk
O. Perez Dominguez



© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

GNDW18f-090622

# EXHIBIT K

Jacqueline Palazzolo (State Bar No. 039977)
**JACKSON LEWIS P.C.**
2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
Telephone: (602) 714-7044
Facsimile: (602) 714-7045
Jacqueline.Palazzolo@jacksonlewis.com
*Attorneys for Defendant Lincoln Financial Group*

ARIZONA SUPERIOR COURT

MARICOPA COUNTY

| | |
|---|---|
| Dustin Heintzman,<br>Plaintiff,<br>vs.<br>Lincoln Financial Group,<br>Defendant. | Case No.: CV2025-14346<br><br>**NOTICE OF FILING NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332 and 1441, Lincoln Financial Group ("Defendant"), serves this Notice that it has filed a Notice of Removal of the above-captioned action from this Court to the United States District Court for the District of Arizona. A true and correct copy of the Notice of Removal is attached as Exhibit 1 and is incorporated by reference.

As provided in 28 U.S.C. § 1446(d), this Notice effects the removal of this action, and this Court shall proceed no further unless and until this case is remanded.

DATED May 22, 2025.

JACKSON LEWIS P.C.

By: /s/ *Jacqueline Palazzolo*
Jacqueline Palazzolo
*Attorneys for Defendant*

The foregoing e-filed
May 22, 2025

**COPY** of the foregoing emailed
May 22, 2025 to:

Dustin Heintzman
43106 N. 44th Drive
Phoenix, AZ 85087
Phone: (480) 457-0939
Dheintzman@gmail.com
*Plaintiff Pro Se*

By: */s/ Susan Stimson*

4932-2013-5238, v. 2

# EXHIBIT L

# Wells Fargo & Company Short-Term Disability Plan

## (As Amended and Restated Effective January 1, 2023)

## Wells Fargo & Company Short-Term Disability Plan
## Effective January 1, 2023
## Table of Contents


| CONTENT | PAGE |
|---|---|
| **Section 1: Introduction**<br>1.1 History of the Plan<br>1.2 Rules of Interpretation | **3** |
| **Section 2: Definitions**<br>2.1 Administrator or Plan Administrator<br>2.2 Affiliate<br>2.3 Beneficiary<br>2.4 Benefits<br>2.5 Code<br>2.6 Common Control<br>2.7 Employee<br>2.8 Employer<br>2.9 ERISA<br>2.10 Participant<br>2.11 Participating Employer<br>2.12 Plan<br>2.13 Plan Sponsor<br>2.14 Plan Sponsor Representative<br>2.15 Plan Trustee<br>2.16 Plan Year<br>2.17 Summary Plan Description<br>2.18 Trust | **4-6** |
| **Section 3: Eligibility and Participation**<br>3.1 General Eligibility and Participation<br>3.2 Cessation of Coverage for Participants | **6** |
| **Section 4: Benefits**<br>4.1 Benefits | **6** |
| **Section 5: Funding and Contributions**<br>5.1 Benefit Funding<br>5.2 Contributions<br>5.3 Plan Expenses<br>5.4 Recovery of Improperly Paid Benefits | **6-7** |

| | |
|---|---|
| **Section 6: Administration of the Plan**<br>6.1 Powers and Duties of Plan Administrator<br>6.2 Delegation of Duties<br>6.3 Plan Records<br>6.4 Indemnification<br>6.5 Named Fiduciaries<br>6.6 Method of Executing Instruments<br>6.7 Facility of Payment<br>6.8 Information Furnished by Participants and Beneficiaries<br>6.9 Service of Legal Process | **8-10** |
| **Section 7: Claims and Appeals**<br>7.1 Claims and Appeals | **11** |
| **Section 8: Amendment and Termination**<br>8.1 Amendment<br>8.2 Termination of the Plan | **11** |
| **Section 9: Miscellaneous**<br>9.1 Plan Sponsor<br>9.2 Limitation and Authority<br>9.3 Fiduciary Principles<br>9.4 Conflict of Interest<br>9.5 Dual Capacity<br>9.6 Spendthrift Provision<br>9.7 Construed as a Whole | **12-13** |
| **Section 10: Disclaimers**<br>10.1 No Employment Rights<br>10.2 No Guarantee<br>10.3 No Co-Responsibility | **13** |
| **Signature Page** | **14** |

# Wells Fargo & Company Short-Term Disability Plan
## Effective January 1, 2023

## SECTION 1
## INTRODUCTION

The Wells Fargo & Company Short-Term Disability Plan is hereby amended and restated effective January 1, 2023 (the "Plan"). This Plan document, together with the Summary Plan Descriptions (SPDs), shall constitute the written plan document for the Plan. Capitalized terms as used in this document shall have the meanings defined in this Plan.

1.1 **History of the Plan.** The Plan was originally adopted by Norwest Corporation effective January 1, 1994. The Plan was restated in its entirety effective January 1, 1995. The Plan was further amended and restated effective January 1, 1998. Effective July 1, 1999, the name of the Plan was changed to the "Wells Fargo & Company Short Term Disability Plan" and it was amended and restated for all Medically Certified Health Conditions, as defined by this Plan, occurring on or after July 1, 1999. From January 1, 2003 until 2018, the Plan was further amended and restated annually with the publication of an updated SPD. The Plan was amended and restated effective December 3, 2018. The Wells Fargo & Company Short-Term Disability Plan was established to provide a payment to regular and fixed term Employees should a disability occur during employment. (See Section 3.1 for General Eligibility and Participation criteria).

1.2 **Rules of Interpretation.**

(a) Whenever appropriate, words used herein in the singular may be read in the plural, or words used herein in the plural may be read in the singular; the masculine may include the feminine; and the words hereof, herein or hereunder or other similar compounds of the word here shall mean and refer to the entire Plan and not to any particular paragraph or section of the Plan unless the context clearly indicates to the contrary.

(b) The titles given to the various sections of the Plan are inserted for convenience of reference only and are not part of the Plan, and they shall not be considered in determining the purpose, meaning or intent of any provision hereof.

(c) Any reference in the Plan to a statute or regulation shall be considered also to mean and refer to any subsequent amendment or replacement of that statute or regulation.

(d) In the event of any inconsistency or conflict in the eligibility provisions of this Plan document and the Summary Plan Description(s), the Plan shall govern.

(e) Except to the extent that federal law is controlling, the Plan shall be construed and enforced in accordance with the laws of the State of Minnesota.

## SECTION 2
## DEFINITIONS

When the following terms are used with initial capital letters they shall have the following meanings:

2.1 **Administrator or Plan Administrator**. The "Plan Administrator" of the Plan for purposes of ERISA §3(16)(A) is the Company's: Head of Human Resources (or the functional equivalent title of the most senior position in Human Resources), the Head of Total Rewards (or the functional equivalent title of the most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), and the Head of Benefits (or the functional equivalent title of the most senior position in Human Resources over benefit plans and programs other than the Head of Human Resources and the Head of Total Rewards) each of whom, acting individually or jointly, may take action as the Plan Administrator, or its or their authorized delegate.

2.2 **Affiliate**. An "Affiliate" means any trade or business entity under Common Control of the Plan Sponsor.

2.3 **Beneficiary**. A "Beneficiary" is a person, persons, trust, estate or charitable institution designated by a Participant as entitled to benefit payments under the Plan upon the death of the Participant. If a Beneficiary is not designated or the Beneficiary dies before the Participant, the Benefit will be paid to the following individuals in the order listed below, unless otherwise provided in the Summary Plan Description: (i) the Participant's surviving spouse or domestic partner; (ii) equally among the Participant's surviving biological and adopted children, except if any of the participant's children predecease the participant but leave surviving descendants, such descendants shall take by right of representation the share their parents would have taken If living; (iii) equally between the Participant's surviving parents; (iv) equally among the Participant's surviving brothers and sisters; (v) the Participant's estate.

2.4 **Benefits**. The "Benefits" are the benefits provided under this Plan, as further described in Section 4.1.

2.5 **Code**. The "Code" is the Internal Revenue Code of 1986, including applicable regulations for the specified section of the Code. Any reference in this Plan to a section of the Code, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

2.6 **Common Control**. A trade or business entity (whether corporation, partnership, sole proprietorship or otherwise) is under "Common Control" with another trade or business entity (i) if both entities are corporations which are members of a controlled group of corporations as defined in §414(b) of the Code, (ii) if both entities are trades or businesses (whether or not incorporated) which are under common control as defined in §414(c) of said Code, (iii) if both entities are members of an affiliated service group as defined in §414(m) of the Code, or (iv) if both entities are required to be aggregated pursuant to regulations under §414(o) of the Code.

2.7 **Employee.** An Employee is a person who is employed by Wells Fargo or a participating subsidiary or affiliate of Wells Fargo, who is on the Wells Fargo U.S. payroll system, and whose income for this employment is subject to federal income tax withholding.

An Employee does not include an individual who is (i) not classified by Wells Fargo as an employee, even if that individual is later determined to have been a Wells Fargo employee, or (ii) a Wells Fargo employee classified as a flexible employee or an intern.

2.8 **Employer**. The "Employer" is the Plan Sponsor and its subsidiaries or Affiliates, and any successor thereof that adopts the Plan.

2.9 **ERISA**. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, including applicable regulations for the specified section of ERISA. Any reference in this Plan to a section of ERISA, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

2.10 **Participant**. A "Participant" is an eligible Employee who becomes a Participant in the Plan in accordance with the provisions of Section 3 of this Plan. An individual who becomes a Participant in the Plan shall be considered to continue as a Participant until the Participant's coverage is terminated in accordance with Section 3.2 of this Plan.

2.11 **Participating Employer.** A "Participating Employer" is the Plan Sponsor and each of the participating subsidiaries and Affiliates of the Plan Sponsor that are designated as a Participating Employer for purposes of this Plan by Wells Fargo & Company by written action of the President, Chief Executive Officer, Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate. A Participating Employer will cease to be a Participating Employer if: (i) the Plan Sponsor withdraws its consent permitting the Participating Employer to participate in the Plan; or (ii) the Participating Employer ceases to be an Affiliate.

2.12 **Plan**. The "Plan" is this written document entitled the "Wells Fargo & Company Short-Term Disability Plan", as the same may be amended from time to time. The Plan includes the Summary Plan Description, which is incorporated herein by reference. It is intended that this Plan is an employee welfare benefit plan within the meaning of ERISA.

2.13 **Plan Sponsor**. The "Plan Sponsor" is Wells Fargo & Company, and any successor thereto.

2.14 **Plan Sponsor Representative**. The "Plan Sponsor Representative" is the Plan Sponsor's Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate, each of whom may act individually or jointly in

performing actions that are authorized under the Plan for them to perform on behalf of the Plan Sponsor.

**2.15** **Plan Trustee**. The "Plan Trustee" is Wells Fargo Bank, N.A., and any successor thereto.

**2.16** **Plan Year**. The "Plan Year" is the twelve (12) consecutive month period beginning January 1 and ending December 31.

**2.17** **Summary Plan Description**. A "Summary Plan Description" is a written summary of the Participant's Benefits and rights. The Summary Plan Description for the Wells Fargo & Company Short-Term Disability Plan is incorporated into and made a part of the Plan. Should there be any inconsistencies or conflicts between the Summary Plan Descriptions and this Plan document, the Plan shall govern as set forth in the Rules of Interpretation described in Section 1.2 of this document.

**2.18** **Trust**. The "Trust" is the trust described in Section 5.1.

## SECTION 3
## ELIGIBILITY AND PARTICIPATION

**3.1** **General Eligibility and Participation**. Eligibility to participate in a Benefit shall be determined by the provisions of the applicable Summary Plan Description including any Exhibits or Appendices to the Summary Plan Description. The Summary Plan Description is incorporated into and made a part of the Plan.

**3.2** **Cessation of Coverage for Participants**. Eligibility under the Plan shall terminate as set forth in the applicable Summary Plan Description.

## SECTION 4
## BENEFITS

**4.1** **Benefits.** Participants shall be entitled to Benefits in the amounts, and subject to the conditions, set forth in the applicable Summary Plan Description.

Notwithstanding any provision of this Plan to the contrary, the compensation of each Employee taken into account for any year for purposes of determining the benefit payable under the Plan shall not exceed the limit set forth in Code Section 505(b)(7), including any adjustment for inflation.

## SECTION 5
## FUNDING AND CONTRIBUTIONS

**5.1** **Benefit Funding**. All sums of money contributed by the Employer and employees from time to time in support of the Plan shall be held and administered in trust (the "Trust"). The Trust shall exist pursuant to a trust agreement between the Plan Sponsor and the

Plan Trustee, or any successor Plan Trustee duly appointed by a Plan Sponsor Representative. Benefits provided through this Plan are paid through the Trust. Amounts deposited in the Trust shall be held in accordance with the terms of the Trust, as in effect from time to time, and such amounts may be used for any Plan purpose. In accordance with Department of Labor prohibited transaction exemption 80-26 ("PTE 80-26), as may subsequently be amended or modified, the Plan Sponsor or an Affiliate may advance Benefits on behalf of the Plan and subsequently reimburse itself for advanced Benefits. No Employee, former Employee or dependent shall have any right to, or interest in, the assets of the Plan Sponsor or any Employer or the assets of the Trust, or any other funding vehicle of the Plan.

**5.2** **Contributions**. Benefits are paid by the Employers. Participant contributions are not required.

**5.3** **Plan Expenses**. All fees and expenses incurred in connection with the operation and administration of the Plan may be paid out of the Trust or any other Plan assets to the extent that it is legally permissible for such fees and expenses to be paid. The Plan Sponsor may, but is not required to, pay such fees and expenses directly. The Plan Sponsor may also advance amounts properly payable by the Plan or Trust and then obtain reimbursement from the Plan and Trust for such advances.

**5.4** **Recovery of Improperly Paid Benefits**.

(a) **Errors and Mistakes**. The Plan Administrator reserves the right to recover amounts from an Employee, former Employee, or Beneficiary that have been improperly paid, directly or indirectly, to the Employee, former Employee, or Beneficiary as a result of error or mistake. To the extent such amounts are to be recovered from a third-party, the Employee, former Employee, or Beneficiary is required to cooperate and assist the Plan Administrator in recovering such amounts from the third-party. The Plan Administrator reserves the right to perform audits and other investigations to determine whether an Employee, former Employee, or Beneficiary, or someone or entity on their behalf, has been overpaid.

(b) **Misrepresentation, False Claims, or Fraudulent Activity**. The Plan Administrator reserves the right to recover amounts from an Employee, former Employee, or Beneficiary that have been improperly paid, directly or indirectly, to or on behalf of an Employee, former Employee, or Beneficiary as a result of misrepresentation, false claims, or fraudulent activity by the Employee, former Employee, or Beneficiary. The Plan Administrator reserves the right to (i) recoup all of the payments of benefits to the Employee, former Employee, or Beneficiary; (ii) perform audits and other investigations to determine whether a Participant or Beneficiary has engaged in fraud or deceit; and (iii) require the Employee, former Employee, or Beneficiary to cooperate in the audit or investigation, provided such action is permitted by ERISA or other applicable law.

## SECTION 6
## ADMINISTRATION OF THE PLAN

**6.1 Powers and Duties of Plan Administrator.**

(a) The Plan Administrator shall have complete control of the administration of the Plan, with all discretionary authority and powers allowed by law to interpret the Plan and to carry out its duties and discharge its responsibilities under the Plan. It is intended that this discretion be broad enough to result in the review of the Plan Administrator's decisions under the arbitrary and capricious standard of review. In addition to powers and duties otherwise stated in the Summary Plan Descriptions, the powers and duties of the Plan Administrator include (but are not limited to) the following:

i. To establish and enforce such written rules, regulations, and procedures as it shall deem necessary or proper for the efficient operation and administration of the Plan;

ii. To interpret and construe, in its sole discretion, the Plan, and to decide all questions of eligibility of any person to participate in the Plan or to receive benefits under it, and its interpretation thereof shall be final and conclusive;

iii. To determine, in its sole discretion, the amount, manner, and time of payment of Benefits which shall be payable to any Participant, in accordance with the provisions of the Plan, and to determine the person or persons to whom such Benefits shall be paid. Benefits are payable under the Plan only to the extent that the Plan Administrator determines that the Participant is eligible and entitled to them;

iv. To authorize the payment of Benefits and reasonable expenses for administering the Plan;

v. To prescribe written procedures to be followed in submitting claims for Benefits;

vi. To prepare and distribute, in such manner as the Plan Administrator determines to be appropriate and consistent with applicable law, information describing or explaining the Plan;

vii. To decide all questions concerning the Plan;

viii. To furnish any participating Affiliate, upon request, and government agencies as required, such reports with respect to the administration of the Plan as are reasonable and appropriate;

ix. To delegate its powers and duties pursuant to Section 6.2; and

x. To make any factual determinations necessary to the administration of the Plan.

(b) The Plan Administrator, in its sole discretion, may appoint a claims administrator to act as a fiduciary with respect to claims under the Plan. The claims administrator shall have the following powers and duties with respect to any powers and duties delegated by the Plan Administrator. The claims administrator shall have the same discretionary authority as the Plan Administrator:

i. To interpret and construe, in its sole discretion, the Plan, and to decide all questions of eligibility of any person to receive Benefits under the Plan, and its interpretation thereof shall be final and conclusive;

ii. To determine, in its sole discretion, the amount, manner, and time of payment of Benefits which shall be payable to any Participant, in accordance with the provisions of the Plan, and to determine the person or persons to whom such Benefits shall be paid; and

iii. To prescribe written procedures to be followed in submitting claims for Benefits.

**6.2** **Delegation of Duties**. For purposes of operation and administration of the Plan, the Plan Administrator may:

(a) Appoint one or more committees (the "Committee"), subcommittees of the Committee (whose members need not be members of the Committee), or otherwise appoint other individuals or departments at an Employer and determine their powers;

(b) Employ legal or other counsel and agents; and

(c) Obtain clerical, accounting, claims administration, and actuarial assistance.

**6.3** **Plan Records**. The Plan Administrator or the designated claims administrator, if any, shall maintain appropriate accounts and records relating to the operation and administration of the Plan and shall keep records of all allocations and delegations of fiduciary responsibilities that the Plan Administrator or, to the extent a benefit is insured, the Insurer makes, including terminations and modifications of such allocations and delegations.

**6.4** **Indemnification**.

(a) **General Rule**. Except as prohibited by applicable law, the Plan Sponsor shall indemnify, to the extent not covered by insurance, any director, officer or employee of an Employer who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether under the terms of ERISA or otherwise, wherever brought, whether civil, criminal, administrative or investigative by reason of the fact that the individual is or was a fiduciary or administrator of this Plan or by reason of acting in any other capacity in connection with this Plan, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement, actually and reasonably incurred by the individual in connection with such action, suit or proceeding if the individual acted in good faith, was not grossly negligent, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the individual's

conduct was unlawful (an "Indemnified Party"). In no event shall this indemnification apply to liability that arises from the individual's claim for their own benefit. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself create a presumption that the person did not act in good faith, was grossly negligent and, with respect to any criminal action or proceeding, had reasonable cause to believe that the individual's conduct was unlawful. The indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(b) **Notice of Action**. The Indemnified Party shall promptly notify the Plan Sponsor upon their receipt of notice of the commencement of any action against them that may entitle the Indemnified Party to indemnification under Section 6.5(a).

(c) **Purchase of Insurance**. The Plan Sponsor may purchase insurance to cover liability or losses occurring by reason of the act or omission of any fiduciary to the Plan.

**6.5** **Named Fiduciaries**. The Plan Administrator and its delegates shall be the "named fiduciaries" of the Plan within the meaning of section 402 of ERISA, and as such shall have authority to control and manage the operation and administration of the Plan.

**6.6** **Method of Executing Instruments**. Information to be supplied or written notices to be made or consents to be given by the Plan Sponsor pursuant to any provision of the Plan may be signed in the name of the Plan Sponsor by any officer or by any employee who has been authorized to make such certification or to give such notices or consents.

**6.7** **Facility of Payment**. In case of the legal disability, including minority age, of a Beneficiary entitled to receive any direct payment under the Plan; payment shall be made in accordance with applicable law and otherwise in the discretion of the Plan Administrator.

**6.8** **Information Furnished by Participants and Beneficiaries**. Neither the Plan Sponsor nor the Plan Administrator shall be liable or responsible for any error in the computation of the Benefits of a Participant or Benefit payments to a Beneficiary resulting from any misstatement of fact or law made by the Participant or Beneficiary, directly or indirectly to the Plan Sponsor or Plan Administrator and used by it in determining the Beneficiary's Benefit payments. The Plan Sponsor and the Plan Administrator shall not be obligated or required to increase the Benefits of such Beneficiary which, on discovery of the misstatement, is found to be understated as a result of such misstatement of the Participant or Beneficiary. However, the Benefits of any Beneficiary which are overstated by reason of any such misstatement shall be reduced to the amount appropriate in view of the truth.

**6.9** **Service of Legal Process**. The Corporate Secretary of the Plan Sponsor is designated as the appropriate agent for the receipt of service of legal process directed to the Plan in any legal proceeding, including arbitration, involving the Plan.

## SECTION 7
## CLAIMS AND APPEALS

**7.1** **Claims and Appeals**. For purposes of this Section 7, a "Claim for Benefits" is a claim for Benefit payment made by a claimant (or their representative) in accordance with the procedures set forth in the Summary Plan Description. Casual inquiries about Benefits or the circumstances under which Benefits might be available under the Plan are not "Claims for Benefits" for purposes of this Section 7. Appeals of denied claims shall be submitted in accordance with the procedures set forth in the Summary Plan Description.

## SECTION 8
## AMENDMENT AND TERMINATION

**8.1** **Amendment**. The Plan Sponsor, by action of the Board of Directors of the Plan Sponsor (the "Board"), by action of the Human Resources Committee of the Board, or by action of a person so authorized by resolution of the Board of the Human Resources Committee of the Board, may amend the Plan at any time, for any reason, with or without notice. In addition, a Plan Sponsor Representative may execute a written action amending the Plan in any of the following respects:

(a) To amend the Plan to comply with changes in applicable laws or regulations.

(b) To add or amend the Exhibits or Appendices of the Plan.

(c) To make changes in administration or operation of the Plan to the extent that such changes constitute an amendment to the Plan, which do not materially increase the cost of the Plan to the Plan Sponsor.

All such amendments shall be binding on all Affiliates.

**8.2** **Termination of the Plan**. The Board of Directors of the Plan Sponsor may terminate the Plan at any time, for any reason, with or without notice. In addition, the Plan Sponsor, by written action of its President, Chief Executive Officer, Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate, may terminate the Plan at any time, for any reason, with or without notice as it applies to a particular Participating Employer, subject to any limitations specified in the applicable resolutions adopted by the Board of Directors of the Plan Sponsor on July 31, 2017.

## SECTION 9
## MISCELLANEOUS

**9.1** **Plan Sponsor**. Functions generally assigned to the Plan Sponsor shall be discharged by its officers or delegated and allocated as provided herein. The Plan Sponsor's President, Chief Executive Officer, or a Plan Sponsor Representative may delegate or redelegate and allocate and reallocate to one or more persons or to a committee of persons jointly or severally, whether or not such persons are officers or employees, such functions assigned to the Plan Sponsor hereunder as it may from time to time deem advisable.

**9.2** **Limitation and Authority**. No action taken by any fiduciary, if authority to take such action has been delegated or redelegated to it hereunder, shall be the responsibility of any other fiduciary except as may be required by ERISA. Except to the extent imposed by ERISA, no fiduciary shall have the duty to question whether any other fiduciary is fulfilling all of the responsibility imposed upon such other fiduciary by the Plan or by ERISA or by any regulations or rulings issued there under.

**9.3** **Fiduciary Principles**. Each fiduciary hereunder, in the exercise of each and every power or discretion vested in them by the provisions of the Plan, shall (subject to the applicable provisions of ERISA) discharge their duties with respect to the Plan solely in the interest of the Participants:

(a) for the exclusive purpose of providing benefits to Participants;

(b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(c) in accordance with the documents and instruments governing the Plan insofar as they are consistent with the provisions of ERISA.

**9.4** **Conflict of Interest**. If any employee or officer of the Plan Sponsor to whom authority has been delegated or re-delegated hereunder shall also be a Participant in the Plan, the individual shall have no authority as such member, officer or employee with respect to any matter specially affecting their individual interest hereunder (as distinguished from the interests of all Participants or a broad class of Participants), all such authority being reserved exclusively to the other members, officers or employees, as the case may be, to the exclusion of such Participant, and such Participant shall act only in their individual capacity in connection with any such matter.

**9.5** **Dual Capacity**. Individuals, firms, corporations or partnerships identified herein or delegated or allocated authority or responsibility hereunder may serve in more than one capacity.

**9.6** **Spendthrift Provision**. No Participant shall have any transmissible interest in any Benefit under the Plan nor shall any Participant have any power to anticipate, alienate, dispose of, pledge or encumber the same, nor shall the Employer recognize any assignment thereof, either in whole or in part, nor shall any Benefit be subject to attachment, garnishment, or execution following judgment or other legal process.

**9.7** **Construed as a Whole**. The provisions of the Plan shall be construed as a whole in such manner as to carry out the provisions thereof and shall not be construed separately without relation to the context.

## SECTION 10
## DISCLAIMERS

**10.1** **No Employment Rights**. Neither the terms of the Plan nor the Benefits hereunder nor the continuance thereof shall be a term of the employment of any employee or Participant, and the Employer shall not be obliged to continue the Plan. The terms of the Plan shall not give any employee the right to be retained in the employment of the Employer, and it does not change any employment policies of the Employer.

**10.2** **No Guarantee**. Neither the members of any committee appointed by the Employer nor any of the Employer's officers in any way secure or guarantee the payment of any benefit or amount which may become due and payable hereunder to any Participant or Beneficiary. Neither the members of any committee nor any of the Employer's officers shall be under any liability or responsibility (except to the extent that liability is imposed under ERISA) for failure to effect any of the objectives or purposes of the Plan by reason of the insolvency of the Plan Sponsor.

**10.3** **No Co-Responsibility**. Except as is otherwise provided in ERISA, no fiduciary shall be liable for an act or omission of another person with regard to a fiduciary responsibility that has been allocated to or delegated in the Plan or pursuant to procedures set forth in the Plan.

**IN WITNESS WHEREOF**, Wells Fargo & Company hereby amends and restates the Wells Fargo & Company Short-Term Disability Plan effective January 1, 2023, and has caused this Instrument to be executed by the authorized person signed below.

**WELLS FARGO & COMPANY**

DocuSigned by:

By: Mark Hickman
D4E67A124BC7429...

Name: Mark Hickman

Title: Head of Benefits

Date: 12/26/2022 | 9:11:36 PM PST

# Chapter 10: Short-Term Disability Plan

## Contents

**Contacts** .......... **10-2**

**The basics** .......... **10-3**

General information .......... 10-3

Claims administrator .......... 10-3

**Who's eligible** .......... **10-3**

Eligible employees .......... 10-3

Ineligible employees .......... 10-3

**Cost and funding** .......... **10-3**

**How to enroll** .......... **10-3**

**When coverage begins** .......... **10-4**

New hire or newly eligible or rehired employees .......... 10-4

Rehired employees on or before December 31, 2022 .......... 10-4

Employment classification changes .......... 10-4

Actively at work definition .......... 10-4

**When coverage ends** .......... **10-4**

**Coverage when you're not working** .......... **10-5**

Leave of absence .......... 10-5

**How STD benefits coordinate with leave of absences** .......... **10-5**

**How to file a claim for STD benefits** .......... **10-6**

1. Call your supervisor .......... 10-6

2. Call Lincoln .......... 10-6

3. Get the forms you need .......... 10-7

4. Provide valid medical information .......... 10-7

5. Timely action required .......... 10-7

**How the STD Plan works** .......... **10-7**

STD waiting period .......... 10-7

Qualifying for STD benefits .......... 10-7

Medically certified health condition definition .......... 10-8

Valid medical information .......... 10-8

Approved care provider definition .......... 10-8

Appropriate care and treatment definition .......... 10-8

Proof of your disability .......... 10-8

Benefits determination .......... 10-9

Disability case management .......... 10-9

Confidentiality of medical information .......... 10-9

Medical evaluations and treatment plans .......... 10-9

Independent medical examinations .......... 10-9

Additional evaluations .......... 10-10

On-site medical case management .......... 10-10

Recurrent condition .......... 10-10

**If you are disabled and working (reduced work schedule)** .......... **10-10**

Reduced work schedule STD pay examples .......... 10-10

**STD Plan benefits** .......... **10-11**

STD benefits schedule .......... 10-11

Completed years of service .......... 10-11

Covered pay .......... 10-11

STD benefit amount .......... 10-12

When STD benefits end .......... 10-13

Survivor benefit .......... 10-13

Exclusions .......... 10-14

**Claims and appeals** .......... **10-14**

Filing a claim .......... 10-14

Claim determinations, determination extension, and requests for additional information .......... 10-14

Content of the claim determination notice .......... 10-15

Filing an appeal .......... 10-15

Appeal determination .......... 10-16

Legal action .......... 10-17

# Contacts

| | |
|---|---|
| **To file a claim or for information about your existing claim** | Claims Administrator<br>Lincoln Financial Group (Lincoln)<br>1-866-213-2937<br>mylincolnportal.com<br>(company code: wells) |
| **To fax documentation about your claim** | Lincoln<br>1-866-214-7839 |
| **Information about the Short-Term Disability Plan** | HR Services & Support site<br><br>Lincoln<br>1-866-213-2937<br>wellsfargo@lfg.com |

The information in this chapter — along with applicable sections of "Chapter 1: Eligibility, Enrollment, and More," "Appendix B: Important Notifications and Disclosures," and "Appendix D: Leaves of Absence and Your Benefits" — constitutes the Summary Plan Description (SPD) for the Wells Fargo & Company Short-Term Disability Plan (the STD Plan) that covers regular and fixed term Wells Fargo employees.

## The basics

### General information

The STD Plan provides short-term disability coverage on a self-insured basis and is classified as a "welfare benefit plan" under the Employee Retirement Income Security Act of 1974, as amended (ERISA).

The STD Plan provides you with short-term disability benefits if you have a medically certified health condition and are unable to perform some or all of your job duties for more than seven consecutive calendar days (the "STD waiting period"). (Please review the "Medically certified health condition definition" section on page 10-8.) As it pertains to the waiting period, if you are working a partial schedule as a result of a medically certified health condition, you are not eligible to receive STD benefits until you have been out of work completely for more than seven consecutive calendar days (see the reference to "STD waiting period" in the "How the STD Plan works" on page 10-7).

Generally, STD benefits replace either 65% or 100% of your covered pay, referred to as "salary" in the Benefits section of Workday, per week, depending on your completed years of service, for up to 25 weeks following your completion of the seven consecutive day STD waiting period. (Please review the "STD benefits schedule" on page 10-11.) STD benefits coordinate with other sources of income you receive so that your STD benefit combined with other sources of income is never more than 100% of your predisability covered pay.

Wells Fargo provides short-term disability benefits through two different plans: the STD Plan and the Wells Fargo & Company Short-Term Disability Top-Up Plan (the "STD Top-Up Plan"). While most STD benefits are paid through the STD Plan up to certain plan limits, some employees may receive a portion of their benefits from the STD Top-Up Plan. This is necessary for technical reasons, but if this applies to you then you will receive only one check that will include all your STD benefits. However, it is important to note that the provisions of the STD Top-Up Plan are not part of the SPD or SMM for the STD Plan and the STD Plan provisions are not part of the SPD for the STD Top-Up Plan.

### Claims administrator

The STD Plan is self-insured, and Lincoln Financial Group (Lincoln) is the claims administrator providing administrative claims services. Lincoln has full discretionary authority to administer and interpret the STD Plan.

## Who's eligible

### Eligible employees

You are eligible for the STD Plan if you are a regular or fixed term Wells Fargo employee as described in "Chapter 1: Eligibility, Enrollment, and More."

### Ineligible employees

You are not eligible to participate in the STD Plan if you are:

- Classified as an intern or flexible employee.
- An employee of an affiliate not participating in the STD Plan.
- An employee who is classified as an international employee.
- A person whom Wells Fargo classifies as an independent contractor or any other status by which you are not treated as a common-law employee of Wells Fargo for purposes of withholding taxes, regardless of your actual status. (This applies to all periods of such service of an individual who is subsequently reclassified as an employee, whether the reclassification is retroactive or prospective.)
- A regular or fixed term employee who is on certain types of leaves of absence (see "Appendix D: Leaves of Absence and Your Benefits")

## Cost and funding

Wells Fargo pays the entire cost of your coverage under the STD Plan.

Benefits are funded through the Wells Fargo & Company Short-Term Disability Plan Trust.

## How to enroll

You are automatically enrolled in the STD Plan if you are one of the following:

- A newly hired regular or fixed term employee
- An employee who has had an employment classification change to a regular or fixed term position
- A rehired regular or fixed term employee

# When coverage begins

## New hire or newly eligible or rehired employees

STD coverage begins on your date of hire or date of rehire to a regular or fixed term position, provided that you are actively at work on the day coverage is scheduled to begin.

**Note:** Notwithstanding the above rule, if you were hired or rehired December 2 through December 31 of 2022, coverage will be effective February 1, 2023, provided that you are actively at work on February 1, 2023.

If you are not actively at work the day coverage would normally begin, your coverage will begin when you return to being actively at work and complete at least one full workday in a regular or fixed term position. For more information, see the "Actively at work definition" section on this page.

If you were previously employed by a company that was acquired by or merged with Wells Fargo, certain transition rules may apply to your participation in the STD Plan when you first become an employee as a result of the acquisition or merger.

## Rehired employees on or before December 31, 2022

If you are rehired into a regular or fixed term position within the six-month period following your termination date, your STD coverage begins on your rehire date provided that you were covered by the STD Plan at the time of your termination. If you had not yet completed one full calendar month of service at the time of your termination, your STD coverage will begin on the first of the month following one full calendar month of service after your rehire, subject to the requirement that you are actively at work on your first day of coverage as described below.

If you are rehired into a regular or fixed term position after the six-month period following your termination date, your STD coverage will begin on the first of the month following one full calendar month of service after your rehire, subject to the requirement that you are actively at work on your first day of coverage as described below.

In either case, if you are not actively at work the day coverage would normally begin, your coverage will begin when you return to being actively at work and complete at least one full workday in a regular or fixed term position. For more information, see the "Actively at work definition" section on this page.

## Employment classification changes

If you become eligible for STD coverage as a result of an employment classification change, your coverage becomes effective on the date of your new employment classification. You must also be actively at work the day coverage begins. If you are not actively at work the day coverage would normally begin, your coverage will begin when you return to being actively at work and complete at least one full workday in a regular or fixed term position. For more information, see the "Actively at work definition" section below.

**Note:** Notwithstanding the above rule, if your employment classification to a regular or fixed term position occurs December 2 through December 31 of 2022, coverage will be effective February 1, 2023, provided that you are actively at work on February 1, 2023.

If you change employment classification from regular or fixed term to an intern or flexible employee, your STD coverage will end as of the classification change date. If you are receiving STD benefits as of your classification change date, you will continue to receive STD benefits until you are released to return to work or you are no longer approved for STD benefits.

## Actively at work definition

"Actively at work" means you are performing your customary duties during your regularly scheduled hours at a Wells Fargo location, or at places Wells Fargo requires you to work or travel or allows you to work. Actively at work also includes any normally scheduled days off work, observed holidays, Paid Time Off (PTO), and other paid time away that is recognized under Wells Fargo's time away policies (except for Military Duty time away).

# When coverage ends

Your STD coverage ends on the earliest of the following dates:

- The day your last day of employment takes place
- The day you transfer to an ineligible employment classification or position
- The first day you are away from work for a reason other than PTO, other paid time away that is recognized under Wells Fargo's time away policies, or an authorized leave during which eligibility for STD Plan participation continues (see the "Leave of absence" section on page 10-5)
- The day you begin a Military Leave or time away, Job Search Leave, Preferential Hiring Leave, or unpaid Administrative Leave
- The day you die
- The day the STD Plan is discontinued or terminated
- The day you begin severance benefits under the Wells Fargo & Company Severance Plan on or after 1/1/2022

For information on Wells Fargo's ability to amend, modify, or terminate the STD Plan at any time and for any reason, see the "Future of the plans" section in "Appendix B: Important Notifications and Disclosures."

## Coverage when you're not working

### Leave of absence

Eligibility for STD coverage continues during the following types of leaves of absence*:

- Medical Leave, provided that:
  1. You were eligible to participate in the STD Plan as of your last day worked.
  2. You have not received the maximum amount of STD benefits as shown on the "STD benefits schedule" on page 10-11.
- Workers' Compensation Leave**
- Family Leave
- Paid Administrative Leave
- Personal Leave
- Parental Leave
- Critical Caregiving Leave
- Job-Protected Paid Leave
- Non-working Notice Leave

You are not eligible for STD coverage during a Military Leave, Job Search Leave, Preferential Hiring Leave, unpaid Administrative Leave, or Job-Protected Unpaid Leave. This means that if you become disabled while on one of these leaves, you will not be eligible for STD benefits.

* If your claim for STD benefits has been denied and you continue to remain out of work due to your medically certified health condition (the health condition that was the basis for your denied claim) or for any other reason, you are not eligible to file a subsequent claim for STD benefits for this same health condition (excluding pregnancy) while you remain out of work even if you are on an approved leave of absence. However, you have the right to appeal the denied claim; see the "Filing an appeal" section on page 10-15.

**Wells Fargo provides the Texas Injury Benefit Plan, rather than Workers' Compensation, for Texas employees who have a work-related injury or illness. For Texas employees, references to "Workers' Compensation" shall mean the "Wells Fargo Texas Injury Benefit Plan."

## How STD benefits coordinate with leave of absences

The STD Plan provides pay continuation if you have a medically certified health condition and are unable to perform some or all of you job duties for more than seven consecutive calendar days. Generally, you will be on a leave of absence that runs concurrently to your short-term disability benefits. A leave of absence is not part of the STD Plan and has different requirements, including different forms and deadlines. The discussion of leaves in this section and the chart below is for informational purposes only and is not part of the STD plan or any other ERISA benefit sponsored by Wells Fargo.

| For a | You'll need to provide: |
|---|---|
| **Medical Leave of Absence** | A Certification of Health Care Provider (DOC) form confirming that you are medically unable to work.<br>Provide documentation, including the required certification, within 15 calendar days of the leave administrator's request. You may be required to provide recertification on a periodic basis.<br>**Note:** If you submit a claim for short-term disability (STD) benefits concurrently with a Medical Leave request, you and your health care provider must provide additional medical documentation to support your STD claim (see information about medical documentation under the "Proof of your disability" on page 10-8 ). The Certification of Health Care Provider form submitted with your medical leave request does not provide enough information to support a short-term disability claim. An approved medical leave is unpaid until a short-term disability claim is approved. |

| | |
|---|---|
| **Short-Term Disability claim** | You must provide additional medical documentation described in "Proof of your disability" on page 10-8 to support your STD claim.<br>Authorization forms:<br>• Lincoln Authorization to Obtain and Release Information (PDF)<br>• Kaiser Authorization to Disclose Health Information (PDF).<br>The Certification of Health Care Provider form is used solely for the purpose of approving a medical leave, which is unpaid. In order to receive Short-Term Disability pay during your medical leave, Lincoln will provide you with an Authorization to Obtain and Release Information form that authorizes your provider to share medical records with Lincoln Financial to evaluate your eligibility for STD pay. You will need to sign the authorization form and send it to Lincoln or provide directly to your treating provider. It is your responsibility to ensure that Lincoln receives the information in a timely manner. When medical records are not received timely, any STD payments you may be eligible for may be delayed. See the "Proof of your disability" section on page 10-8 for more details. |
| **Parental Leave** | If you file a claim for maternity Short-Term Disability benefits, then Parental leave supplements the benefits you may be eligible to receive under the STD Plan, if you meet the requirements for Parental Leave. Generally, parental leave runs concurrently with Short-Term Disability benefits.<br>Lincoln will provide you with a Certificate of Care form for Parental Leave where you will self-designate as a primary or nonprimary caregiver.<br>For more information on how the STD Plan coordinates with Parental Leave, see the "STD benefit amount" on page 10-12. |

## How to file a claim for STD benefits

### 1. Call your supervisor

If you are unable to work your regular work schedule, you must speak to your supervisor immediately. If you are unable to personally speak to your supervisor, have someone else make the call. You don't need to share any medical information with your supervisor, but you should keep in regular contact with them about your leave status, including any extension of your leave, work restrictions, return to work date, and requested accommodations, if any.

If you are aware of an impending leave because of a planned medical procedure, you should provide your supervisor with at least 30 days advance notice.

### 2. Call Lincoln

To file a claim for STD benefits for a health condition that is not due to a work-related illness or injury, you must file a claim with Lincoln. There are two ways to file your claim for STD benefits:

1. **Call our claims administrator, Lincoln, at** 1-866-213-2937.
2. **File online at Lincoln at** mylincolnportal.com. First-time users will need to establish a username and password by following the prompts on the screen. The company code for Wells Fargo is "wells."

You may report your claim for disability benefits up to 30 days in advance of the date your leave is to begin.

Proof of your disability is required for all claims and must be received by Lincoln within the designated time frame described in the "Proof of your disability" section starting on page 10-8. Proof may include medical records, test results, or hospitalization records as Lincoln deems necessary. If Lincoln has not received valid medical proof of your disability within the designated time frame, your request for STD benefits will be denied. For more information, see the "STD benefits schedule" on page 10-11 and the "Proof of your disability" section on page 10-8.

If your health condition is due to a work-related illness or injury, you must contact a Risk & Insurance Management Representative by calling 1-877-HRWELLS (1-877-479-3557), option 2, 3, 3 to file a separate Workers' Compensation claim.

If you return to work, and within 30 calendar days you miss work again because of a recurrence of your medically certified health condition, immediately contact all of the following:

- Your supervisor
- Lincoln, at 1-866-213-2937

For more information, see the "Recurrent condition" section on page 10-10.

A claim for STD benefits and Workers' Compensation for the same condition will be coordinated. Workers' Compensation is considered the primary source of income continuation if you have a health condition that is payable under both Workers' Compensation and the STD Plan. STD benefits will be reduced by your Workers' Compensation benefits. (See the "Deductible sources of income" section on page 10-12 for more information.) Claims for STD benefits are reviewed independent of claims for Workers' Compensation benefits.


BPN 000021

### 3. Get the forms you need

The forms referenced below are available by calling Lincoln at 1-866-213-2937.

Please include your Lincoln claim number and your first and last name on all correspondence sent to Lincoln. This allows Lincoln to expedite the review of any correspondence concerning your request for STD benefits.

**Required forms**

Complete the Authorization to Obtain and Release Information form and fax it to Lincoln at 1-866-214-7839 or mail it to the following address:

Lincoln Financial Group
Disability Claims
PO Box 2578
Omaha, NE 68172-9688

To expedite the processing of your claim, Lincoln may need to contact your physician to obtain medical information concerning your disability. Your physician cannot share medical information concerning your disability unless the authorization is on file with Lincoln. Failure to provide a completed authorization form may result in the denial of your claim for STD benefits.

While Lincoln will make attempts on your behalf to obtain your medical records, it is your responsibility to provide the required documentation. Your failure to provide the medical information concerning your disability when required may result in the denial of your claim for STD benefits.

### 4. Provide valid medical information

The medical information you provide in support of your claim must be accurate. If the information is not accurate or the signature of the health care provider is not valid as determined by Lincoln, your claim for STD benefits will be denied or discontinued, you will be disqualified from participating in the STD Plan, and you may be subject to further disciplinary action, including termination of employment.

### 5. Timely action required

Your STD benefits payments will be denied or discontinued if you or your health care provider does not supply, by the due date, all of the information about your condition requested by Lincoln.

**Note:** If you are eligible for benefits under both the STD Plan and the STD Top-Up Plan, you only need to file one claim for STD benefits. The claims administrator of each plan will coordinate the claim with the other plan, if necessary.

## How the STD Plan works

### STD waiting period

You may be eligible for STD benefits after you complete the STD waiting period. The STD waiting period is the seven-consecutive-calendar-day period beginning on the initial date of your medically certified health condition.

If you begin your leave with a reduced work schedule, the hours you have missed will not apply toward the waiting period.

If you return to work and attempt to complete one scheduled workday before the end of the STD waiting period, but you are unable to work at least half of your regularly scheduled workday due to your medically certified health condition, then the STD waiting period will be considered to have been uninterrupted. If you work one full day during your waiting period, your waiting period will start over.

Your time away from work during the STD waiting period is subject to Wells Fargo's time away programs, including required use of your accrued, unused Paid Time Off (PTO) or paid sick time (PST), as applicable during the STD waiting period for any scheduled work hours you miss. If you do not have accrued PTO or PST available, and your time away from work is not otherwise subject to income replacement under Wells Fargo's time away programs, the STD waiting period will be unpaid unless your business group allows employees to use unaccrued PTO from their current year's unaccrued PTO, in which case you may use PTO allowance in accordance with your business group's policy and other paid time away (with the exception of military duty).

If you are requesting STD benefits due to the birth of a child and you are the primary caregiver and have met the eligibility requirements for Parental Leave, you do not need to use PTO or PST to cover the STD waiting period. However, if you are not the primary caregiver and defer your Parental Leave to a later date or you are not yet eligible for Parental Leave, then the previous paragraph applies to you.

### Qualifying for STD benefits

To qualify for STD benefits, you must:

- Be eligible for coverage under the STD Plan.
- Be actively at work on the scheduled day before the onset of disability or on an approved leave of absence that is recognized by the STD Plan (for example, a Medical Leave, Family Leave, Workers' Compensation Leave, or Personal Leave).
- Be considered disabled under the STD Plan; that is, you must have a medically certified health condition that lasts longer than the STD waiting period and prevents you from performing the essential duties of your job.
- Be under the care of an approved care provider.
- Receive appropriate care and treatment for your medically certified health condition.

- File a claim for STD benefits within 90 days following your date of disability. Date of disability is generally defined as the first day that you are medically unable to work due to your condition. Certification must be received to validate that you meet the definition of disability as defined by the plan as of this date. For more information, see "5. Timely action required" on page 10-7.
- Receive approval of STD benefits in accordance with the provisions of the STD Plan.

Even though you may qualify for disability income from other sources such as State Disability Insurance, you must satisfy all of the criteria of the STD Plan before you will qualify for STD benefits under the STD Plan.

## Medically certified health condition definition

For purposes of the STD Plan, a medically certified health condition is generally defined as a disabling injury or illness that:

- Is documented by clinical evidence as provided and certified by an approved care provider. Clinical evidence may include medical records, medical test results, physical therapy notes, mental health records, and prescription records.
- Prevents you from performing the essential functions, duties, and regular schedule of your position as of the last day worked for longer than the STD waiting period.

**Note:** Not all conditions are covered; refer to the "Exclusions" section on page 10-14 for more information.

### Pregnancy

Your date of disability will be considered your date of delivery (or the day after your delivery if you worked on the day you delivered). After you deliver your baby, you may be eligible for six or eight weeks of STD benefits which will include your one week for the STD waiting period if you have not already satisfied it prior to your date of delivery (see the "STD waiting period" section on page 10-7 for more information). You may also be eligible for Parental Leave, which would allow you to receive income replacement beginning on the date of the delivery (parental leave is not part of this STD Plan). See the "How the STD Plan coordinates with Wells Fargo's Parental Leave" section on page 10-12 for more information.

If you experience complications during or after your pregnancy that result in an inability to work, you may be eligible for STD benefits before or after delivery based on the medical information provided to Lincoln. Disabling medical complications related to pregnancy are treated the same as any other disabling injury or illness under the STD Plan. For example, fatigue associated with pregnancy may not qualify as a medically certified health condition under the STD Plan unless your approved care provider documents the clinical evidence that the fatigue prevents you from performing the essential duties of your regular job. For more information, see the "Qualifying for STD benefits" section starting on page 10-7.

## Valid medical information

The medical information you provide in support of your claim must be accurate. If the information is not accurate or the signature of the health care provider is not valid as determined by Lincoln, your claim for STD benefits will be denied or discontinued, you will be disqualified from participating in the STD Plan, and you may be subject to further disciplinary action, including termination of employment.

## Approved care provider definition

"Approved care provider" means a person who is legally licensed to practice medicine and is not you or related to you. A licensed medical practitioner will be considered an approved care provider if:

- Applicable state law requires that such practitioners be recognized for the purposes of certification of disability.
- The care and treatment provided by the practitioner are within the scope of his or her license.

An approved care provider includes a licensed Ph.D. psychologist or other licensed mental health practitioner.

## Appropriate care and treatment definition

"Appropriate care and treatment" means medical care and treatment that meets all of the following criteria:

- It is received from an approved care provider whose training and experience are suitable for treating your medically certified health condition.
- It is necessary to meet your health needs and is of demonstrable medical value.
- It is consistent in type, frequency, and duration of treatment with relevant guidelines of national medical, research, and health coverage organizations.
- It is consistent with the diagnosis of your condition.
- Its purpose is to maximize your medical improvement.

## Proof of your disability

It is your responsibility to ensure that Lincoln receives requested medical proof of your disability, which may include medical records, test results, and hospitalization records, within the designated time frame. If Lincoln has not received the requested medical documentation and valid medical proof within 30 days from the later of the date your claim was filed or your date of disability, your request for STD benefits will be denied. A claim for STD benefits must be filed no later than 90 days following your date of disability (see the "date of disability" definition in the "Qualifying for STD benefits" section starting on page 10-7).

You can file a claim for STD benefits beyond 90 days following your date of disability if you can show both of the following:

- It was not reasonably possible to give timely written proof of your claim for Short-Term Disability benefits. Such proof must be provided as soon as reasonably possible but in no event,

except in the absence of your legal capacity, later than one year from the time proof is otherwise required.

- Medical information supporting your claim for STD benefits satisfactory to Lincoln was provided as soon as was reasonably possible.

## Benefits determination

The determination of a claim for STD benefits is based on one or more of the following:

- Medical information provided by your approved care provider or providers
- Professional opinions of other care providers as designated by Lincoln
- Other criteria as specified in this chapter

You will receive written notification of the status of your claim for STD benefits within 45 days of Lincoln's receipt of your claim for STD benefits. You will receive only one determination (approval or denial) that applies to both the STD Plan and the STD Top-Up Plan.

### Approvals

Approval of a claim for STD benefits is based on one or more of the following:

- Medical information provided by your approved care provider or providers
- Professional opinions of other care providers as designated by Lincoln
- Other criteria as specified in this chapter

You will receive written notification of the status of your claim for STD benefits within 45 days of Lincoln's receipt of your claim for STD benefits. If your claim for STD benefits is approved, the letter will state the expected duration of your STD benefits, when updated medical information is due, or when benefits will stop. Approvals are retroactive to the first day you are medically certified to miss work after the STD waiting period. For more information, see the "Claims and appeals" section starting on page 10-14.

### Denials

If Lincoln denies your claim for STD benefits in whole or in part, the notification of the claims decision will be provided to you and will state the reasons why your claim was denied and reference the specific STD Plan provision or provisions on which the denial is based. You have the right to appeal this determination. For more information, see the "Claims and appeals" section starting on page 10-14.

After a claim for STD benefits has been denied, if you continue to remain out of work due to your medically certified health condition (the health condition that was the basis for your denied claim) or for any other reason, you are not eligible to file a subsequent claim for STD benefits (excluding pregnancy) while you remain out of work even if you are on an approved leave of absence. (However, you have the right to appeal the denied claim; see the "Filing an appeal" section starting on page 10-15.)

Lincoln will notify you of the requirements for maintaining an approved leave of absence with Wells Fargo if your claim for STD benefits was denied and you continue to remain out of work due to your medically certified health condition. Failure to comply with those requirements may result in corrective action up to and including termination of your employment.

## Disability case management

Lincoln will assign a disability case manager to provide case management services, to monitor your continuing eligibility for STD benefits, and to facilitate your timely return to work. Your Lincoln Case Manager will monitor the payment of your STD benefits to ensure that your benefit is being processed correctly. It is your responsibility to keep Lincoln and your supervisor informed with updates about your leave status.

## Confidentiality of medical information

Medical information about your diagnosis, treatment plan, and care provider will be kept confidential by Lincoln, unless your file is released to the plan administrator or its designee in connection with an appeal. Lincoln may release medical information to a third-party vendor or to your treating providers as it pertains to your claim for disability benefits. Such information will not be disclosed to your supervisor without your consent or made part of your personnel file.

With your written consent, information may be shared with Wells Fargo as it pertains to administration of your leave (Leave Disability Management), as it pertains to your return to work (Accommodations Management), or as it pertains to mental health referrals (Employee Assistance Consulting). Information about your dates of leave, eligibility for STD benefits, return to work dates, work restrictions, requested accommodation, or any combination thereof may be provided to your supervisor or Human Resources consultant and may be noted in your personnel file.

## Medical evaluations and treatment plans

Your approved care provider should establish a detailed treatment plan to assist you in your recovery and continue to provide proof of your disability to Lincoln. Before you can return to work, Lincoln and your supervisor must receive a signed confirmation of your release to return to work from your approved care provider. Your release must explain any requested accommodations or work restrictions.

## Independent medical examinations

Lincoln may request another care provider to examine you. This is called an "independent medical examination." The purpose of this exam is to obtain additional information about your condition and treatment plan for the purpose of determining your eligibility for STD benefits. Lincoln chooses the care provider who examines you and pays for the examination. In some cases, more than one independent medical examination may be required. Your refusal to attend or cooperate with the independent medical examination may result in a denial or discontinuation of STD benefits.

In some cases, STD benefits may be stopped at the time the independent medical examination is ordered until the results of the independent medical examination are received and a decision can be made about your eligibility for STD benefits. After your eligibility for STD benefits is approved, STD benefits will be reinstated retroactive to the date benefits stopped.

### Additional evaluations

Lincoln may also request that you receive additional evaluations, which may include rehabilitation, functional, psychological, or vocational evaluations. These evaluations are also used to determine your health status and ability to work. You are required to participate in these evaluations to receive or to continue receiving STD benefits. These evaluations will be provided at no cost to you.

### On-site medical case management

Lincoln may contract with an on-site medical case manager to assist you and your Lincoln disability case manager to facilitate your timely return to work. The on-site medical case manager may accompany you to medical appointments, review and coordinate care and treatment, visit your home and workplace, and communicate with your care providers, supervisor, Human Resources consultants, and your Lincoln disability case manager. You are required to cooperate with on-site medical case management to continue receiving STD benefits.

### Recurrent condition

If your medically certified health condition starts again within 30 calendar days after you have been released to return to work, your condition may be considered a recurrent condition. A recurrent condition is due to the same cause or complication resulting from the initial medically certified health condition. It will be treated as a continuation of your initial medically certified health condition, and you will not have to satisfy a new STD waiting period. The maximum amount of time you may receive STD benefits for the same condition is 26 weeks, which includes the STD waiting period.

If your medically certified health condition starts again 30 calendar days or more after you have been released to return to work on a full-time basis, it will be treated as a new condition under the STD Plan. If that is the case, you will be required to satisfy a new waiting period.

Your covered pay for purposes of determining your STD benefit will be based on your covered pay at the time the condition originally started, versus when the condition starts again, unless you are required to file a new claim (see the "Covered pay" section on page 10-11).

## If you are disabled and working (reduced work schedule)

A reduced work schedule is an accommodation provided to you by your supervisor, Wells Fargo Accommodations Management, or both if you have proof of a disability that prevents you from working 100% of your predisability standard hours as documented by your health care provider. All accommodations must be reviewed and approved by your supervisor, Wells Fargo Accommodations Management, or both.

STD benefits may be paid in combination with the earnings you receive while on a reduced work schedule based on the applicable percentages and time periods described in the "STD benefits schedule" on page 10-11. As a result, in addition to your reduced work schedule earnings, you may receive STD benefits up to your eligible STD benefit amount reduced by other sources of income (see the "Deductible sources of income" section on page 10-12). To be eligible to receive STD benefits on a reduced work schedule, you must satisfy the waiting period and be earning between 20% and 80% of your covered pay (see the "Covered pay" section on page 10-11).

### Reduced work schedule STD pay examples

- Example 1 for employees who have satisfied the STD waiting period and who are eligible for an STD benefit of 65% of their covered pay* (and are not receiving any sources of income other than the reduced work schedule earnings)
  - If your normal biweekly pay amount is $1,000 as an employee working 40 hours per week
    - At a 65%* STD benefit level, your maximum STD benefit would be $650 biweekly
  - If, on the reduced work schedule, you work 20 hours per week and earn $500 biweekly (for your hours worked)
    - The remaining eligible STD benefit would be $150 biweekly (the $650 STD maximum benefit minus the $500 biweekly pay for hours worked)

* Your eligible STD benefit amount is based on the "STD benefits schedule" noted on page 10-11.

- Example 2 for employees who have satisfied the STD waiting period and who are eligible for an STD benefit of 100% of their covered pay* (and are not receiving any sources of income other than the reduced work schedule earnings)
  - If your normal biweekly pay amount is $1,000 as an employee working 40 hours per week
    - At a 100%* STD benefit level, your maximum STD benefit would be $1,000 biweekly
  - If, on the reduced work schedule, you work 20 hours per week and earn $500 biweekly (for your hours worked)
    - The remaining eligible STD benefit would be $500 biweekly (the $1,000 STD maximum benefit minus the $500 biweekly pay for hours worked)

* Your eligible STD benefit amount is based on the "STD benefits schedule" noted on page 10-11.


BPN 000025

# STD Plan benefits

Generally, STD benefits replace either 65% or 100% of your covered pay, referred to as 'salary' in the Benefits section of Workday, for up to 25 weeks, after completion of the STD waiting period, based on your completed years of service, as shown in the table below. For information on covered pay, see the "Covered pay" section on this page.

**Note:** Your STD waiting period of the first seven consecutive days counts toward the 26 weeks.

## STD benefits schedule

| Completed years of service | Weeks at 100% of covered pay* | Weeks at 65% of covered pay* |
|---|---|---|
| Less than 1 year – 3 years | 4 weeks | 21 weeks |
| 4 – 6 years | 7 weeks | 18 weeks |
| 7 – 9 years | 13 weeks | 12 weeks |
| 10 or more years | 25 weeks | None |

* After completion of the STD waiting period (see the "STD waiting period" section on page 10-7 for more information).

## Completed years of service

For STD benefits, your completed years of service are measured from your Continuous Service Date as explained in Workday and Payroll System. You are credited with one year of service after each full 12-month period of employment is completed.

## Covered pay

If you meet the criteria for STD benefits, your benefits are based on covered pay in effect on the day before the initial date of your disability. Your covered pay is determined by the job classification code (job class code) for your position in Workday. To view your STD covered pay, log into Workday, go to View Profile, then choose Actions, then choose Benefits, and View Benefits Annual Rate to see your STD Covered Pay.

### Job class code 2

Most positions within Wells Fargo are job class code 2. For job class code 2 positions, covered pay is defined by your annual base salary. Annual base salary is your hourly rate of pay (including geographical differentials, if applicable) multiplied by the number of standard hours indicated in Workday and takes into account the number of working days each calendar year. The amount is multiplied by the number of weeks in a calendar year to determine your annual base salary. Base salary may be expressed as an annual, monthly, or hourly rate. Base salary includes amounts designated as before-tax contributions you make to Wells Fargo's sponsored benefit plans, but it does not include overtime pay, shift differentials, language differentials, incentives, bonuses, commissions, or perquisites such as parking or auto allowances or commute subsidies.

Covered pay considered for purposes of determining disability benefits under the STD Plan will be limited to the annual amount set forth in Section 505(b)(7) of the Internal Revenue Code and is subject to change by the federal government at its discretion. If your covered pay for benefit purposes exceeds that amount, the amount exceeding the limit will be considered covered pay under the STD Top-Up Plan. If benefit payments are due from both the STD Plan and STD Top-Up Plan, the payments will be consolidated into a single check each time payments are due.

### Job class codes 1 and 5

**Variable Incentive Compensation positions**

Variable Incentive Compensation (VIC) applies to jobs with a pay structure designed to deliver 40% or more of the expected total cash through incentives that are paid primarily on a monthly or quarterly basis. Assignment of jobs to VIC requires approval of Wells Fargo Rewards and Performance Management. For VIC employees (positions assigned job class code 5 in Workday), covered pay is your benefits base as indicated on that system based on the most recent quarterly earnings calculation. Generally, quarterly calculations are completed sometime in the first several days of each quarter. The amount of covered pay is updated on the day of the calculation. Benefits base is calculated quarterly by annualizing earnings based on salary and incentives or commissions paid in the last 12 months, divided by the number of months with earnings greater than $0, up to a maximum amount set forth in Section 505(b)(7) of the Internal Revenue Code and is subject to change by the federal government at its discretion. Benefits base does not include some forms of compensation such as overtime pay, shift differentials, hiring and retention bonuses, noncash awards, and prerequisites (such as parking or auto allowance or commute subsidies).

**Wells Fargo Mortgage Consultant Participant positions**

For Mortgage Consultant Participant employees (positions assigned a job class code 1 in Workday), covered pay is your benefits base as indicated on that system up to a maximum amount set forth in Section 505(b)(7) of the Internal Revenue Code and is subject to change by the federal government at its discretion.

When employees in job class code 1 qualify for STD, the regular or guaranteed commission and the credit draw commission continue during the seven-day waiting period, unless you have

PTO available. The draw is then discontinued at the start of the Medical Leave. The draw resumes on the first day the employee returns to work (including on a flex-time basis or reduced work schedule). The excess (if any) net commission credit is given to the employee. In no case will the employee earn less than the calculated STD benefit each month while on leave.

## STD benefit amount

STD benefits are generally based on your covered pay, referred to as "salary" in the Benefits section on Workday, in effect on the day before the initial date of your disability, and on your completed years of service on the first day of your disability, as shown in the "STD benefits schedule" on page 10-11.

### How the STD Plan coordinates with Wells Fargo's Parental Leave

This section is for informational purposes only and is not part of the STD Plan or any other ERISA benefit sponsored by Wells Fargo & Company.

Parental Leave supplements the benefits you may be eligible for under the STD Plan if the condition for which you are requesting STD Plan benefits is due to the birth of your child and your claim is approved.

- If you are eligible for 100% benefits under this STD Plan (offset by deductible sources of income as noted below), generally you would not receive income replacement via Parental Leave for the time period that the STD Plan benefit runs concurrent to the Parental Leave.
- If you are eligible for 65% benefits under this STD Plan (offset by deductible sources of income as noted below), your concurrent income replacement under Parental Leave will be reduced accordingly, and you will only receive 35% of your income replacement under Parental Leave for the time period that the STD Plan benefit runs concurrent to Parental Leave.

You will never receive more than 100% of your predisability covered pay. For more information about Parental Leave, refer to Service Now or call Lincoln at 1-866-213-2937.

### Deductible sources of income

You will never receive more than 100% of your predisability covered pay, referred to as "salary" in the Benefits section of Workday. Your STD benefit automatically will be reduced by the amount of income you receive (or are eligible to receive) from other sources, including but not limited to:

- Statutory benefits, such as state-mandated disability benefits. However, if the state denies your state disability benefit for any reason, your Wells Fargo short-term disability benefits will not be reduced.
- Workers' Compensation benefits attributed to lost income, including a settlement awarded to you.
- Automobile and other accident wage replacement income.
- Income while you are working under an approved reduced work schedule.
- Any income received for disability under a government compulsory benefit or program that provides for loss of time from your job due to your disability, whether such payment is made directly by the plan or program or through a third party (including but not limited to Social Security disability, retirement, and dependent's benefits, but excluding survivor benefits).
- Third-party recovery for loss of income by judgment, settlement, or otherwise, including recovery amounts you may receive from future earnings as permitted by state law.

If you work in a state or commonwealth with a mandatory disability program (currently California, Hawaii, Massachusetts, New Jersey, New York, Puerto Rico, Rhode Island, Washington State, and Washington D.C.), it is your responsibility to apply for statutory benefits for most states. Lincoln will file with Hawaii, New Jersey, and New York on your behalf.

If your employment ends before the date you become disabled, you will not be eligible for STD coverage.

### Payment of STD benefits

Once the plan administrator receives notification from Lincoln that your STD claim meets the criteria for approval, all STD benefits will be paid through the Wells Fargo regular biweekly payroll system. Your regular benefit deductions will continue to be taken from your STD benefits in accordance with the provisions of the other Wells Fargo plans in which you participate. In some instances, your health benefit deductions may not be included in your disability check. In these cases, you may be billed later. You should review each payment to ensure that the appropriate deductions have been taken for your health benefits.

### Recovery of overpayment

If you receive excess STD benefits because you receive income from one of these deductible sources described in the "Deductible sources of income" section on this page or due to a miscalculation of your benefit amount, the STD Plan or the plan administrator or its designee reserves the right to seek full reimbursement of the amounts overpaid, including but not limited to offsetting any future STD benefits by the amount overpaid.

### Right of recovery

When your injury or sickness appears to be someone else's fault, benefits otherwise payable under the STD Plan for loss of time as a result of that injury or sickness will not be paid unless you or your legal representative agree to the following:

- To repay the STD Plan for such benefits to the extent they are for losses for which compensation is paid to you by or on behalf of the person at fault.
- To allow the STD Plan to place a lien on such compensation and to hold such compensation in trust for the STD Plan.
- To execute and give to the plan any instruments needed to secure the rights under the first two conditions, above.

Further, when the STD Plan has paid benefits to you or on your behalf, the STD Plan may be subrogated to all rights of recovery that you have against the person at fault. These subrogation rights will extend only to recovery of the amount the STD Plan has paid. You must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to the STD Plan.

You must also agree not to take any action that is inconsistent with the STD Plan's right to reimbursement. Reimbursement will be made regardless of whether you are fully compensated, or "made whole," by the settlement, verdict, judgment, award, or insurance proceeds and regardless of whether costs are allocated to "loss of income." The STD Plan will not be responsible for bearing the cost of any legal fees you incur as a result of any action you take against the third party.

If you refuse to fully reimburse the STD Plan after receipt of a settlement, verdict, judgment, award, or insurance proceeds, the STD Plan may not pay for any future benefits. The STD Plan may seek legal action against you to recover paid benefits related to your injury or condition. In addition, the STD Plan will have a lien on any amounts payable by a third party or under an insurance policy or program, to the extent benefits are paid by the STD Plan.

Attorneys' fees and expenses that you incur in connection with the recovery of money from third parties may not be deducted from subrogation or reimbursement amounts, unless agreed to by the plan administrator, in its discretion, or by the plan administrator's designee. Accordingly, the "Common Fund" doctrine will not apply to any recovery of money by you or on your behalf.

#### Taxes on STD benefits

STD benefits are taxable income. Wells Fargo withholds federal, state, local, and Social Security taxes from your STD benefits.

### When STD benefits end

Generally, the maximum amount of time you may receive STD benefits for the same condition is 25 weeks after completion of the STD waiting period. STD benefits may end sooner if you are unwilling or fail to do any one of the following:

- Provide medical evidence in a timely manner.
- Provide requested medical records.
- Receive continuing care and treatment from an approved care provider, appropriate to your condition, during the time period for which STD benefits are requested.
- Participate in additional medical and other evaluations requested by Lincoln. For more information, see the "Medical evaluations and treatment plans" on page 10-9.
- Cooperate with on-site medical case management.
- Follow the prescribed treatment plan.
- Follow approved work restrictions or accommodations.
- Return to work when medically certified to do so.
- Accept the same or equivalent offer of employment within your medical restrictions.
- Begin working for wage or profit if not under an approved reduced work schedule.
- The date your weekly earnings exceed 80% of your predisability covered pay.
- The day you have received the maximum amount of STD benefits, as shown in the "Deductible sources of income" section on page 10-12, for the same or related health condition that gave rise to your STD claim.

In addition, your STD benefits may end if your employment is terminated for any reason. **Note:** If you are notified of a qualifying event under the Wells Fargo & Company Severance Plan and receiving STD benefits during the notice period or prior to your severance eligibility period, STD benefits will be paid until benefits end (up to 25 weeks).

### Survivor benefit

If you die while receiving STD benefits, the STD Plan will pay your beneficiary a lump sum in an amount equal to 10 times your predisability biweekly covered pay, referred to as "salary" in the Benefits section of Workday, based on your covered pay in effect on the day before the initial date of your disability. For example, if you are an employee who has a covered pay amount of $35,000 per year, you would calculate $35,000 per year divided by 26 weeks to get a $1,346.16 biweekly rate. To calculate the survivor benefit, take this amount and multiply it by 10 to get $13,461.60. In this example, $13,461.60 would be paid to your designated beneficiary at the time of your death. The survivor benefit will be reduced by any overpayment of STD benefits that may exist. Taxes will not be withheld from your survivor benefit. Your estate or the benefit recipient may, however, be required to pay additional taxes to the state or federal government. Consult a tax advisor for tax information related to your survivor benefit.

You will be asked to name one or more beneficiaries when you enroll in benefits, using the online Beneficiary Designation Tool in Workday. If you need to change your beneficiaries during the year, you may do so at any time by going to the Beneficiary Designation Tool in Workday.

If a beneficiary is not designated, the beneficiary dies before you, or at the same time as you, and no contingent beneficiary was named, or the contingent beneficiary has also died before you, the death benefit is paid to your survivors in the following order:

1. Your surviving spouse or domestic partner[1]
2. Equally among your surviving biological and adopted children[2]
3. Equally between your surviving parents
4. Equally among your surviving brothers and sisters
5. Your estate

1. See the "Definitions relating to marital status" section on page 10-14 for more information.

2. Except that if any of the participant's children predecease him or her but leave descendants surviving, such descendants shall take by right of representation the share their parent would have taken, if living.

To qualify for a survivor benefit, the following conditions must be met:

- You completed the STD waiting period.
- You were eligible to receive STD benefits at the time of your death.
- You were not working a reduced work schedule due to your disability.
- Proof of your death is provided to Wells Fargo.

If your beneficiary disagrees with the determination on your eligibility or the amount of the survivor benefit, your beneficiary has the right to request and obtain a copy of this SPD.

Upon your beneficiary's written request, the plan administrator will provide, free of charge, copies of documents, records, and other information relevant to your survivor benefit.

**Definitions relating to marital status**

For payment of a benefit if there are no surviving or designated beneficiaries, the following terms have the meanings assigned to them below:

- "Spouse" means the person to whom you are legally married on your date of death under the laws of any U.S. or foreign jurisdiction having the legal authority to sanction marriages, or the person who was your current common-law spouse on your date of death in a legally recognized common-law marriage, contracted in a state that recognizes common-law marriages.
- "Domestic partner" means a person of the same or opposite gender who is not your spouse as defined above, that meets at least one of the following criteria on your date of death:
  - You and the person are joined in a civil union (or other similar formal relationship) on your date of death that is recognized as creating some or all of the rights of marriage under the laws of the state or country in which the union was created but is not denominated or recognized as a marriage under the laws of that state or country.
  - You and the person share a domestic partnership (or other similar formal relationship) on your date of death that is registered by a city, county, state, or country but is not denominated or recognized as a marriage under the laws of that city, county, state, or country.
  - You and the person both meet all of the following requirements:
    i. You shared a single, intimate, committed relationship of mutual caring as of your date of death and intended to remain in the relationship indefinitely.
    ii. You resided together in the same residence and lived in a spouse-like relationship prior to your date of death.
    iii. You are not related by blood or a degree of closeness that would prohibit marriage under the law of the state in which you reside.
    iv. Neither of you was married to another person under either federal, state, or common law, and neither is a member of another domestic partnership.
    v. You were both mentally competent to consent or contract.
    vi. You were both at least 18 years old.
    vii. You were financially interdependent, jointly responsible for each other's basic living expenses, and if asked, your partner is able to provide documentation for three of the following being in effect as of your date of death:
      **A.** Joint ownership of real property or a common leasehold interest in real property
      **B.** Common ownership of an automobile
      **C.** Joint bank or credit accounts
      **D.** A will that designates the other as primary beneficiary
      **E.** A beneficiary designation form for a retirement plan or life insurance policy signed and completed to the effect that one partner is a beneficiary of the other
      **F.** Designation of one partner as holding power of attorney for health care decisions for the other

### Exclusions

Not all conditions are covered by the STD Plan. STD benefits will not be paid for any condition that is caused by or results from:

- Your commission or attempted commission of any criminal act, including but not limited to an assault, battery, felony, or any combination thereof
- Injuries you sustain or illness contracted while you are performing services for, or receiving compensation from, the military
- A cosmetic surgery or elective procedure, unless the surgery or procedure is:
  - Performed in connection with, or as a result of, a covered injury, accident, or illness in which the surgery or procedure is required due to reconstruction or medical necessity
  - Gender reassignment-related services (pre- and post-surgery)
  - Performed in connection with organ donation

## Claims and appeals

### Filing a claim

For information on how to file a claim for STD benefits, see the "How to file a claim for STD benefits" section starting on page 10-6. It is important to note that there is a claims filing deadline. You may report your claim for disability benefits up to 30 days in advance of the date your leave is to begin (for example, if you have a planned surgery), and you must file your claim for STD benefits no later than 90 days following your date of disability (see reference to the date of disability definition in the "Qualifying for STD benefits" section on page 10-7).

### Claim determinations, determination extension, and requests for additional information

After you submit a claim for STD benefits, Lincoln will review your claim and notify you of its decision to approve or deny your claim. Such notification will be mailed to you within a reasonable period, not to exceed 45 days from the date you submitted your claim, except for situations requiring an extension of time because of matters beyond the control of the STD Plan. In such cases, Lincoln may have up to two additional extensions of 30 days each to provide you such notification.


BPN 000029

If Lincoln needs an extension, it will notify you before the expiration of the initial 45-day period (or before the expiration of the first 30-day extension period if a second 30-day extension period is needed), state the reason why the extension is needed, and state when it will make its determination. If an extension is needed because you did not provide sufficient information or filed an incomplete claim, the time from the date of Lincoln's notice requesting additional information and an extension until Lincoln receives the requested information does not count toward the time period that Lincoln is allowed to notify you of its claim decision. You will have 45 days to provide the requested information from the date you receive the extension notice requesting additional information from Lincoln.

## Content of the claim determination notice

As noted in the "Claim determinations, determination extension, and requests for additional information" section on page 10-14, you will receive notice of the claim determination. An adverse benefit determination is a denial of your claim in whole or in part. Adverse benefit determinations will contain a complete discussion on why the claim was denied. If you receive an adverse benefit determination, the notice will provide the following information:

- The specific reason or reasons for the adverse determination.
- Reference to the specific STD plan provisions on which the determination is based.
- If the claim is denied because Lincoln did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed.
- If applicable, a description of any additional information necessary to perfect the claim and an explanation of why such information is necessary.
- If an internal rule, protocol, guideline, or other criterion was relied upon to make the determination, the decision will state the internal rule, protocol, guideline, or other criterion or indicate that a copy of such rule, protocol, guideline, or other criterion will be provided free of charge to you upon request.
- If the adverse determination is based on medical necessity, experimental treatment, or similar exclusion or limit, you will receive an explanation of scientific or clinical judgment for the determination, applying the terms of the STD Plan to the claimant's medical circumstances or a statement that an explanation of the scientific or clinical judgment will be provided to you free of charge upon request.
- An explanation of the basis for disagreeing (or not) with any of the following information:
  - The views presented by the claimant of treating health care professionals or vocational professionals who evaluated you
  - The views of the medical or vocational experts whose advice was obtained in connection with the decision, whether or not relied upon
  - A Social Security disability benefit determination presented by you
- A description of the plan's claim appeal review procedures (including the time limits applicable to such procedures) and a statement regarding your right to bring a civil action under the Employee Retirement Income Security Act of 1974, as amended (ERISA) Section 502(a) following an adverse benefit determination on appeal.
- A statement that you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your claim for benefits.
- Any additional information required under applicable law.

For additional information on filing an appeal under the STD Plan, see the "Filing an appeal" section starting on this page.

## Filing an appeal

If Lincoln denies your STD claim in whole or in part, you believe you should be entitled to a different amount of STD benefits, or you disagree with any determination that has been made reflecting your benefits under the STD Plan, you (or your authorized representative) may appeal the decision. You (or your authorized representative) must file your appeal in writing within 180 days of the date you receive Lincoln's written adverse benefit determination of your claim, regardless of any discussions or consultations about the claim. The STD Plan has one level of appeal, which is reviewed by Lincoln. You or your duly authorized representative must sign your appeal request. It should be sent to Lincoln by U.S. mail to the following address:

Lincoln Financial Group
Disability Claims
PO Box 2578
Omaha, NE 68172-9688

The address for filing an appeal is also noted in Lincoln's adverse benefit determination letter.

Your appeal must be submitted in writing to Lincoln and must include at least the following information:

- Your name
- Your claim number
- Name of plan (that is, the Wells Fargo & Company STD Plan)
- Reference to the initial determination
- An explanation of why you are appealing the determination

As part of your appeal, you may submit any additional written comments, documents (including additional medical information), records, or other information relating to your appeal that supports your request for benefits. Upon your written request, Lincoln will provide you free of charge with copies of documents, records, and other information relevant to your initial claim. A request for this information does not, however, extend the time frame you have to file your appeal.

The appeal process is your opportunity to present documentation and evidence to show that your claim for benefits is covered and payable under the STD Plan. However, the review process does not permit you, your beneficiary, or your authorized representative to appear in person before, or meet with, anyone from Lincoln. It is your responsibility to submit any information or documentation that you wish to have considered for the appeal review within the required time frame. Please note that Lincoln does not reimburse fees that may be associated with filing the appeal or with your obtaining information you wish to have reviewed in support of your appeal.

After Lincoln receives your written, timely filed appeal request, it will conduct a full and fair review of your appeal. The reviewer will look at the claim anew, and no deference will be given to the prior denial. The review on appeal will take into account all comments, documents, records, and other information that you submit relating to your claim without regard to whether such information was submitted or considered in the initial determination of your claim.

In addition, the person who will review your appeal will not be the same person who reviewed your claim or a subordinate of the person who made the initial decision to deny your claim (in whole or in part). If the initial denial is based in whole or in part on a medical judgment, the reviewer will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment. This health care professional will not have consulted on the initial determination, and will not be a subordinate of any person who was consulted on the initial determination.

**Note:** It is very important that you submit all of the information you want reviewed when your appeal is filed. The date the appeal is filed is the date it is received by Lincoln. Lincoln must make the appeal determination within the time frame stated below based on the date that you file your appeal regardless of whether you indicate more information to be forthcoming.

Lincoln will provide you, free of charge, with copies of any new or additional evidence or rationale considered, relied upon, or generated in connection with the claim appeal review as soon as possible and sufficiently in advance of the date on which the notice of final benefit determinant is required to be provided to you (to give you a reasonable opportunity to respond prior to that date). After you receive the information, if you feel there is a need, you may submit additional information to Lincoln for final consideration in the appeal review process (such information must be submitted before the final determination is due). Lincoln must consider any response from you as part of its decision making process, provided it is submitted before the final determination is due.

## Appeal determination

After you file your appeal for disability benefits with Lincoln, it (or its designated representative) will review your appeal and notify you of its decision to approve or deny your appeal. This notification will be mailed to you within a reasonable period, but no later than 45 days after Lincoln's receipt of your written request for appeal review, except for situations requiring an extension of time because of matters beyond the control of the STD Plan. If an extension is required, Lincoln may have up to an additional 45 days to provide you with notification of the final decision. If such an extension is needed, Lincoln will notify you before the expiration of the initial 45-day period, state the reason or reasons why the extension is needed, and state when it will make its determination. You will have 45 days to provide any requested information from the date you receive the notice from Lincoln.

If Lincoln denies your claim on appeal in whole or in part (an adverse benefit determination), it will send you a final written decision. The notification of the decision will provide the following information:

- The specific reason or reasons why your appeal was denied.
- Reference to the specific STD Plan provision or provisions on which the denial was based.
- If the appeal was denied because sufficient information was not provided, a description of the additional information needed and an explanation as to why it was needed.
- An explanation of the basis for disagreeing (or not) with any of the following information:
  - The views presented by the claimant of treating health care professionals or vocational professionals who evaluated you
  - The views of the medical or vocational experts whose advice was obtained in connection with the decision, whether or not relied upon
  - A Social Security disability benefit determination presented by you
- If an internal rule, protocol, guideline, or other criterion was relied upon to make the determination, the decision will state the internal rule, protocol, guideline, or other criterion or indicate that a copy of such rule, protocol, guideline, or other criterion will be provided free of charge to you upon request.
- If the adverse benefit determination is based on a medical necessity, experimental treatment, or similar exclusion or limit, an explanation of scientific or clinical judgment for the determination, applying the terms of the STD Plan to the claimant's medical circumstances or a statement that such explanation of the scientific or clinical judgment will be provided free of charge upon request.
- A statement that you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your claim for benefits.


BPN 000031

- If applicable, a description of the plan's additional claim appeal review procedures (including the time limits applicable to such procedures).
- A statement of the claimant's right to bring a civil action under Section 502(a) of ERISA.
- A description of any applicable contractual limitations period and its expiration.
- Any additional information required under applicable law.

If you wish to receive copies of documents, records, and other information relevant to the final appeal decision, send Lincoln your written request for documents, records, and other information.

## Legal action

**With limited exceptions for violations of claim procedure regulations, no legal action can be filed against the Plan until the STD Plan's claims and appeals procedures have been exhausted (refer to the "Claims and appeals" section starting on page 10-14 for more information). Any suit for benefits must be brought within one year from the date the final appeal determination was issued by Lincoln.**