# EXHIBIT A

DocuSign Envelope ID: E6A5D7F7-1C23-4074-AD62-30C8DC63B60A

# Wells Fargo & Company Short-Term Disability Plan

## (As Amended and Restated Effective January 1, 2023)

**Wells Fargo & Company Short-Term Disability Plan**
**Effective January 1, 2023**
**Table of Contents**


| CONTENT | PAGE |
|---|---|
| **Section 1: Introduction**<br>1.1 History of the Plan<br>1.2 Rules of Interpretation | **3** |
| **Section 2: Definitions**<br>2.1 Administrator or Plan Administrator<br>2.2 Affiliate<br>2.3 Beneficiary<br>2.4 Benefits<br>2.5 Code<br>2.6 Common Control<br>2.7 Employee<br>2.8 Employer<br>2.9 ERISA<br>2.10 Participant<br>2.11 Participating Employer<br>2.12 Plan<br>2.13 Plan Sponsor<br>2.14 Plan Sponsor Representative<br>2.15 Plan Trustee<br>2.16 Plan Year<br>2.17 Summary Plan Description<br>2.18 Trust | **4-6** |
| **Section 3: Eligibility and Participation**<br>3.1 General Eligibility and Participation<br>3.2 Cessation of Coverage for Participants | **6** |
| **Section 4: Benefits**<br>4.1 Benefits | **6** |
| **Section 5: Funding and Contributions**<br>5.1 Benefit Funding<br>5.2 Contributions<br>5.3 Plan Expenses<br>5.4 Recovery of Improperly Paid Benefits | **6-7** |

| | |
|---|---|
| **Section 6: Administration of the Plan**<br>6.1 Powers and Duties of Plan Administrator<br>6.2 Delegation of Duties<br>6.3 Plan Records<br>6.4 Indemnification<br>6.5 Named Fiduciaries<br>6.6 Method of Executing Instruments<br>6.7 Facility of Payment<br>6.8 Information Furnished by Participants and Beneficiaries<br>6.9 Service of Legal Process | **8-10** |
| **Section 7: Claims and Appeals**<br>7.1 Claims and Appeals | **11** |
| **Section 8: Amendment and Termination**<br>8.1 Amendment<br>8.2 Termination of the Plan | **11** |
| **Section 9: Miscellaneous**<br>9.1 Plan Sponsor<br>9.2 Limitation and Authority<br>9.3 Fiduciary Principles<br>9.4 Conflict of Interest<br>9.5 Dual Capacity<br>9.6 Spendthrift Provision<br>9.7 Construed as a Whole | **12-13** |
| **Section 10: Disclaimers**<br>10.1 No Employment Rights<br>10.2 No Guarantee<br>10.3 No Co-Responsibility | **13** |
| **Signature Page** | **14** |

# Wells Fargo & Company Short-Term Disability Plan
# Effective January 1, 2023

## SECTION 1
## INTRODUCTION

The Wells Fargo & Company Short-Term Disability Plan is hereby amended and restated effective January 1, 2023 (the "Plan"). This Plan document, together with the Summary Plan Descriptions (SPDs), shall constitute the written plan document for the Plan. Capitalized terms as used in this document shall have the meanings defined in this Plan.

**1.1 History of the Plan.** The Plan was originally adopted by Norwest Corporation effective January 1, 1994. The Plan was restated in its entirety effective January 1, 1995. The Plan was further amended and restated effective January 1, 1998. Effective July 1, 1999, the name of the Plan was changed to the "Wells Fargo & Company Short Term Disability Plan" and it was amended and restated for all Medically Certified Health Conditions, as defined by this Plan, occurring on or after July 1, 1999. From January 1, 2003 until 2018, the Plan was further amended and restated annually with the publication of an updated SPD. The Plan was amended and restated effective December 3, 2018. The Wells Fargo & Company Short-Term Disability Plan was established to provide a payment to regular and fixed term Employees should a disability occur during employment. (See Section 3.1 for General Eligibility and Participation criteria).

**1.2 Rules of Interpretation**.

(a) Whenever appropriate, words used herein in the singular may be read in the plural, or words used herein in the plural may be read in the singular; the masculine may include the feminine; and the words hereof, herein or hereunder or other similar compounds of the word here shall mean and refer to the entire Plan and not to any particular paragraph or section of the Plan unless the context clearly indicates to the contrary.

(b) The titles given to the various sections of the Plan are inserted for convenience of reference only and are not part of the Plan, and they shall not be considered in determining the purpose, meaning or intent of any provision hereof.

(c) Any reference in the Plan to a statute or regulation shall be considered also to mean and refer to any subsequent amendment or replacement of that statute or regulation.

(d) In the event of any inconsistency or conflict in the eligibility provisions of this Plan document and the Summary Plan Description(s), the Plan shall govern.

(e) Except to the extent that federal law is controlling, the Plan shall be construed and enforced in accordance with the laws of the State of Minnesota.

## SECTION 2
## DEFINITIONS

When the following terms are used with initial capital letters they shall have the following meanings:

**2.1** **Administrator or Plan Administrator**. The “Plan Administrator” of the Plan for purposes of ERISA §3(16)(A) is the Company’s: Head of Human Resources (or the functional equivalent title of the most senior position in Human Resources), the Head of Total Rewards (or the functional equivalent title of the most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), and the Head of Benefits (or the functional equivalent title of the most senior position in Human Resources over benefit plans and programs other than the Head of Human Resources and the Head of Total Rewards) each of whom, acting individually or jointly, may take action as the Plan Administrator, or its or their authorized delegate.

**2.2** **Affiliate**. An “Affiliate” means any trade or business entity under Common Control of the Plan Sponsor.

**2.3** **Beneficiary**. A “Beneficiary” is a person, persons, trust, estate or charitable institution designated by a Participant as entitled to benefit payments under the Plan upon the death of the Participant. If a Beneficiary is not designated or the Beneficiary dies before the Participant, the Benefit will be paid to the following individuals in the order listed below, unless otherwise provided in the Summary Plan Description: (i) the Participant’s surviving spouse or domestic partner; (ii) equally among the Participant’s surviving biological and adopted children, except if any of the participant’s children predecease the participant but leave surviving descendants, such descendants shall take by right of representation the share their parents would have taken If living; (iii) equally between the Participant’s surviving parents; (iv) equally among the Participant’s surviving brothers and sisters; (v) the Participant’s estate.

**2.4** **Benefits**. The “Benefits” are the benefits provided under this Plan, as further described in Section 4.1.

**2.5** **Code**. The “Code” is the Internal Revenue Code of 1986, including applicable regulations for the specified section of the Code. Any reference in this Plan to a section of the Code, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

**2.6** **Common Control**. A trade or business entity (whether corporation, partnership, sole proprietorship or otherwise) is under “Common Control” with another trade or business entity (i) if both entities are corporations which are members of a controlled group of corporations as defined in §414(b) of the Code, (ii) if both entities are trades or businesses (whether or not incorporated) which are under common control as defined in §414(c) of said Code, (iii) if both entities are members of an affiliated service group as defined in §414(m) of the Code, or (iv) if both entities are required to be aggregated pursuant to regulations under §414(o) of the Code.

DocuSign Envelope ID: E6A5D7F7-1C23-4074-AD62-30C8DC63B60A

**2.7** **Employee.** An Employee is a person who is employed by Wells Fargo or a participating subsidiary or affiliate of Wells Fargo, who is on the Wells Fargo U.S. payroll system, and whose income for this employment is subject to federal income tax withholding.

An Employee does not include an individual who is (i) not classified by Wells Fargo as an employee, even if that individual is later determined to have been a Wells Fargo employee, or (ii) a Wells Fargo employee classified as a flexible employee or an intern.

**2.8** **Employer**. The "Employer" is the Plan Sponsor and its subsidiaries or Affiliates, and any successor thereof that adopts the Plan.

**2.9** **ERISA**. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, including applicable regulations for the specified section of ERISA. Any reference in this Plan to a section of ERISA, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

**2.10** **Participant**. A "Participant" is an eligible Employee who becomes a Participant in the Plan in accordance with the provisions of Section 3 of this Plan. An individual who becomes a Participant in the Plan shall be considered to continue as a Participant until the Participant's coverage is terminated in accordance with Section 3.2 of this Plan.

**2.11** **Participating Employer.** A "Participating Employer" is the Plan Sponsor and each of the participating subsidiaries and Affiliates of the Plan Sponsor that are designated as a Participating Employer for purposes of this Plan by Wells Fargo & Company by written action of the President, Chief Executive Officer, Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate. A Participating Employer will cease to be a Participating Employer if: (i) the Plan Sponsor withdraws its consent permitting the Participating Employer to participate in the Plan; or (ii) the Participating Employer ceases to be an Affiliate.

**2.12** **Plan**. The "Plan" is this written document entitled the "Wells Fargo & Company Short-Term Disability Plan", as the same may be amended from time to time. The Plan includes the Summary Plan Description, which is incorporated herein by reference. It is intended that this Plan is an employee welfare benefit plan within the meaning of ERISA.

**2.13** **Plan Sponsor**. The "Plan Sponsor" is Wells Fargo & Company, and any successor thereto.

**2.14** **Plan Sponsor Representative**. The "Plan Sponsor Representative" is the Plan Sponsor's Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate, each of whom may act individually or jointly in

performing actions that are authorized under the Plan for them to perform on behalf of the Plan Sponsor.

**2.15** **Plan Trustee**. The "Plan Trustee" is Wells Fargo Bank, N.A., and any successor thereto.

**2.16** **Plan Year**. The "Plan Year" is the twelve (12) consecutive month period beginning January 1 and ending December 31.

**2.17** **Summary Plan Description**. A "Summary Plan Description" is a written summary of the Participant's Benefits and rights. The Summary Plan Description for the Wells Fargo & Company Short-Term Disability Plan is incorporated into and made a part of the Plan. Should there be any inconsistencies or conflicts between the Summary Plan Descriptions and this Plan document, the Plan shall govern as set forth in the Rules of Interpretation described in Section 1.2 of this document.

**2.18** **Trust**. The "Trust" is the trust described in Section 5.1.

## SECTION 3
## ELIGIBILITY AND PARTICIPATION

**3.1** **General Eligibility and Participation**. Eligibility to participate in a Benefit shall be determined by the provisions of the applicable Summary Plan Description including any Exhibits or Appendices to the Summary Plan Description. The Summary Plan Description is incorporated into and made a part of the Plan.

**3.2** **Cessation of Coverage for Participants**. Eligibility under the Plan shall terminate as set forth in the applicable Summary Plan Description.

## SECTION 4
## BENEFITS

**4.1** **Benefits.** Participants shall be entitled to Benefits in the amounts, and subject to the conditions, set forth in the applicable Summary Plan Description.

Notwithstanding any provision of this Plan to the contrary, the compensation of each Employee taken into account for any year for purposes of determining the benefit payable under the Plan shall not exceed the limit set forth in Code Section 505(b)(7), including any adjustment for inflation.

## SECTION 5
## FUNDING AND CONTRIBUTIONS

**5.1** **Benefit Funding**. All sums of money contributed by the Employer and employees from time to time in support of the Plan shall be held and administered in trust (the "Trust"). The Trust shall exist pursuant to a trust agreement between the Plan Sponsor and the

Plan Trustee, or any successor Plan Trustee duly appointed by a Plan Sponsor Representative. Benefits provided through this Plan are paid through the Trust. Amounts deposited in the Trust shall be held in accordance with the terms of the Trust, as in effect from time to time, and such amounts may be used for any Plan purpose. In accordance with Department of Labor prohibited transaction exemption 80-26 ("PTE 80-26), as may subsequently be amended or modified, the Plan Sponsor or an Affiliate may advance Benefits on behalf of the Plan and subsequently reimburse itself for advanced Benefits. No Employee, former Employee or dependent shall have any right to, or interest in, the assets of the Plan Sponsor or any Employer or the assets of the Trust, or any other funding vehicle of the Plan.

**5.2** **<u>Contributions</u>**. Benefits are paid by the Employers. Participant contributions are not required.

**5.3** **<u>Plan Expenses</u>**. All fees and expenses incurred in connection with the operation and administration of the Plan may be paid out of the Trust or any other Plan assets to the extent that it is legally permissible for such fees and expenses to be paid. The Plan Sponsor may, but is not required to, pay such fees and expenses directly. The Plan Sponsor may also advance amounts properly payable by the Plan or Trust and then obtain reimbursement from the Plan and Trust for such advances.

**5.4** **<u>Recovery of Improperly Paid Benefits</u>**.

(a) **Errors and Mistakes**. The Plan Administrator reserves the right to recover amounts from an Employee, former Employee, or Beneficiary that have been improperly paid, directly or indirectly, to the Employee, former Employee, or Beneficiary as a result of error or mistake. To the extent such amounts are to be recovered from a third-party, the Employee, former Employee, or Beneficiary is required to cooperate and assist the Plan Administrator in recovering such amounts from the third-party. The Plan Administrator reserves the right to perform audits and other investigations to determine whether an Employee, former Employee, or Beneficiary, or someone or entity on their behalf, has been overpaid.

(b) **Misrepresentation, False Claims, or Fraudulent Activity**. The Plan Administrator reserves the right to recover amounts from an Employee, former Employee, or Beneficiary that have been improperly paid, directly or indirectly, to or on behalf of an Employee, former Employee, or Beneficiary as a result of misrepresentation, false claims, or fraudulent activity by the Employee, former Employee, or Beneficiary. The Plan Administrator reserves the right to (i) recoup all of the payments of benefits to the Employee, former Employee, or Beneficiary; (ii) perform audits and other investigations to determine whether a Participant or Beneficiary has engaged in fraud or deceit; and (iii) require the Employee, former Employee, or Beneficiary to cooperate in the audit or investigation, provided such action is permitted by ERISA or other applicable law.

## SECTION 6
## ADMINISTRATION OF THE PLAN

**6.1 <u>Powers and Duties of Plan Administrator</u>.**

(a) The Plan Administrator shall have complete control of the administration of the Plan, with all discretionary authority and powers allowed by law to interpret the Plan and to carry out its duties and discharge its responsibilities under the Plan. It is intended that this discretion be broad enough to result in the review of the Plan Administrator's decisions under the arbitrary and capricious standard of review. In addition to powers and duties otherwise stated in the Summary Plan Descriptions, the powers and duties of the Plan Administrator include (but are not limited to) the following:

i. To establish and enforce such written rules, regulations, and procedures as it shall deem necessary or proper for the efficient operation and administration of the Plan;

ii. To interpret and construe, in its sole discretion, the Plan, and to decide all questions of eligibility of any person to participate in the Plan or to receive benefits under it, and its interpretation thereof shall be final and conclusive;

iii. To determine, in its sole discretion, the amount, manner, and time of payment of Benefits which shall be payable to any Participant, in accordance with the provisions of the Plan, and to determine the person or persons to whom such Benefits shall be paid. Benefits are payable under the Plan only to the extent that the Plan Administrator determines that the Participant is eligible and entitled to them;

iv. To authorize the payment of Benefits and reasonable expenses for administering the Plan;

v. To prescribe written procedures to be followed in submitting claims for Benefits;

vi. To prepare and distribute, in such manner as the Plan Administrator determines to be appropriate and consistent with applicable law, information describing or explaining the Plan;

vii. To decide all questions concerning the Plan;

viii. To furnish any participating Affiliate, upon request, and government agencies as required, such reports with respect to the administration of the Plan as are reasonable and appropriate;

ix. To delegate its powers and duties pursuant to Section 6.2; and

x. To make any factual determinations necessary to the administration of the Plan.

(b) The Plan Administrator, in its sole discretion, may appoint a claims administrator to act as a fiduciary with respect to claims under the Plan. The claims administrator shall have the following powers and duties with respect to any powers and duties delegated by the Plan Administrator. The claims administrator shall have the same discretionary authority as the Plan Administrator:

i. To interpret and construe, in its sole discretion, the Plan, and to decide all questions of eligibility of any person to receive Benefits under the Plan, and its interpretation thereof shall be final and conclusive;

ii. To determine, in its sole discretion, the amount, manner, and time of payment of Benefits which shall be payable to any Participant, in accordance with the provisions of the Plan, and to determine the person or persons to whom such Benefits shall be paid; and

iii. To prescribe written procedures to be followed in submitting claims for Benefits.

**6.2** **Delegation of Duties**. For purposes of operation and administration of the Plan, the Plan Administrator may:

(a) Appoint one or more committees (the "Committee"), subcommittees of the Committee (whose members need not be members of the Committee), or otherwise appoint other individuals or departments at an Employer and determine their powers;

(b) Employ legal or other counsel and agents; and

(c) Obtain clerical, accounting, claims administration, and actuarial assistance.

**6.3** **Plan Records**. The Plan Administrator or the designated claims administrator, if any, shall maintain appropriate accounts and records relating to the operation and administration of the Plan and shall keep records of all allocations and delegations of fiduciary responsibilities that the Plan Administrator or, to the extent a benefit is insured, the Insurer makes, including terminations and modifications of such allocations and delegations.

**6.4** **Indemnification**.

(a) **General Rule**. Except as prohibited by applicable law, the Plan Sponsor shall indemnify, to the extent not covered by insurance, any director, officer or employee of an Employer who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether under the terms of ERISA or otherwise, wherever brought, whether civil, criminal, administrative or investigative by reason of the fact that the individual is or was a fiduciary or administrator of this Plan or by reason of acting in any other capacity in connection with this Plan, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement, actually and reasonably incurred by the individual in connection with such action, suit or proceeding if the individual acted in good faith, was not grossly negligent, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the individual's

DocuSign Envelope ID: E6A5D7F7-1C23-4074-AD62-30C8DC63B60A

conduct was unlawful (an “Indemnified Party”). In no event shall this indemnification apply to liability that arises from the individual's claim for their own benefit. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself create a presumption that the person did not act in good faith, was grossly negligent and, with respect to any criminal action or proceeding, had reasonable cause to believe that the individual's conduct was unlawful. The indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(b) **Notice of Action**. The Indemnified Party shall promptly notify the Plan Sponsor upon their receipt of notice of the commencement of any action against them that may entitle the Indemnified Party to indemnification under Section 6.5(a).

(c) **Purchase of Insurance**. The Plan Sponsor may purchase insurance to cover liability or losses occurring by reason of the act or omission of any fiduciary to the Plan.

**6.5** **Named Fiduciaries**. The Plan Administrator and its delegates shall be the “named fiduciaries” of the Plan within the meaning of section 402 of ERISA, and as such shall have authority to control and manage the operation and administration of the Plan.

**6.6** **Method of Executing Instruments**. Information to be supplied or written notices to be made or consents to be given by the Plan Sponsor pursuant to any provision of the Plan may be signed in the name of the Plan Sponsor by any officer or by any employee who has been authorized to make such certification or to give such notices or consents.

**6.7** **Facility of Payment**. In case of the legal disability, including minority age, of a Beneficiary entitled to receive any direct payment under the Plan; payment shall be made in accordance with applicable law and otherwise in the discretion of the Plan Administrator.

**6.8** **Information Furnished by Participants and Beneficiaries**. Neither the Plan Sponsor nor the Plan Administrator shall be liable or responsible for any error in the computation of the Benefits of a Participant or Benefit payments to a Beneficiary resulting from any misstatement of fact or law made by the Participant or Beneficiary, directly or indirectly to the Plan Sponsor or Plan Administrator and used by it in determining the Beneficiary’s Benefit payments. The Plan Sponsor and the Plan Administrator shall not be obligated or required to increase the Benefits of such Beneficiary which, on discovery of the misstatement, is found to be understated as a result of such misstatement of the Participant or Beneficiary. However, the Benefits of any Beneficiary which are overstated by reason of any such misstatement shall be reduced to the amount appropriate in view of the truth.

**6.9** **Service of Legal Process**. The Corporate Secretary of the Plan Sponsor is designated as the appropriate agent for the receipt of service of legal process directed to the Plan in any legal proceeding, including arbitration, involving the Plan.

## SECTION 7
## CLAIMS AND APPEALS

**7.1** **Claims and Appeals**. For purposes of this Section 7, a "Claim for Benefits" is a claim for Benefit payment made by a claimant (or their representative) in accordance with the procedures set forth in the Summary Plan Description. Casual inquiries about Benefits or the circumstances under which Benefits might be available under the Plan are not "Claims for Benefits" for purposes of this Section 7. Appeals of denied claims shall be submitted in accordance with the procedures set forth in the Summary Plan Description.

## SECTION 8
## AMENDMENT AND TERMINATION

**8.1** **Amendment**. The Plan Sponsor, by action of the Board of Directors of the Plan Sponsor (the "Board"), by action of the Human Resources Committee of the Board, or by action of a person so authorized by resolution of the Board of the Human Resources Committee of the Board, may amend the Plan at any time, for any reason, with or without notice. In addition, a Plan Sponsor Representative may execute a written action amending the Plan in any of the following respects:

(a) To amend the Plan to comply with changes in applicable laws or regulations.

(b) To add or amend the Exhibits or Appendices of the Plan.

(c) To make changes in administration or operation of the Plan to the extent that such changes constitute an amendment to the Plan, which do not materially increase the cost of the Plan to the Plan Sponsor.

All such amendments shall be binding on all Affiliates.

**8.2** **Termination of the Plan**. The Board of Directors of the Plan Sponsor may terminate the Plan at any time, for any reason, with or without notice. In addition, the Plan Sponsor, by written action of its President, Chief Executive Officer, Head of Human Resources (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources), Head of Total Rewards (or the functional equivalent title of the Plan Sponsor's most senior position in Human Resources over compensation and benefit plans or programs other than the Head of Human Resources), or their delegate, may terminate the Plan at any time, for any reason, with or without notice as it applies to a particular Participating Employer, subject to any limitations specified in the applicable resolutions adopted by the Board of Directors of the Plan Sponsor on July 31, 2017.

## SECTION 9
## MISCELLANEOUS

**9.1** **Plan Sponsor**. Functions generally assigned to the Plan Sponsor shall be discharged by its officers or delegated and allocated as provided herein. The Plan Sponsor's President, Chief Executive Officer, or a Plan Sponsor Representative may delegate or redelegate and allocate and reallocate to one or more persons or to a committee of persons jointly or severally, whether or not such persons are officers or employees, such functions assigned to the Plan Sponsor hereunder as it may from time to time deem advisable.

**9.2** **Limitation and Authority**. No action taken by any fiduciary, if authority to take such action has been delegated or redelegated to it hereunder, shall be the responsibility of any other fiduciary except as may be required by ERISA. Except to the extent imposed by ERISA, no fiduciary shall have the duty to question whether any other fiduciary is fulfilling all of the responsibility imposed upon such other fiduciary by the Plan or by ERISA or by any regulations or rulings issued there under.

**9.3** **Fiduciary Principles**. Each fiduciary hereunder, in the exercise of each and every power or discretion vested in them by the provisions of the Plan, shall (subject to the applicable provisions of ERISA) discharge their duties with respect to the Plan solely in the interest of the Participants:

(a) for the exclusive purpose of providing benefits to Participants;

(b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(c) in accordance with the documents and instruments governing the Plan insofar as they are consistent with the provisions of ERISA.

**9.4** **Conflict of Interest**. If any employee or officer of the Plan Sponsor to whom authority has been delegated or re-delegated hereunder shall also be a Participant in the Plan, the individual shall have no authority as such member, officer or employee with respect to any matter specially affecting their individual interest hereunder (as distinguished from the interests of all Participants or a broad class of Participants), all such authority being reserved exclusively to the other members, officers or employees, as the case may be, to the exclusion of such Participant, and such Participant shall act only in their individual capacity in connection with any such matter.

**9.5** **Dual Capacity**. Individuals, firms, corporations or partnerships identified herein or delegated or allocated authority or responsibility hereunder may serve in more than one capacity.

**9.6** **Spendthrift Provision**. No Participant shall have any transmissible interest in any Benefit under the Plan nor shall any Participant have any power to anticipate, alienate, dispose of, pledge or encumber the same, nor shall the Employer recognize any assignment thereof, either in whole or in part, nor shall any Benefit be subject to attachment, garnishment, or execution following judgment or other legal process.

DocuSign Envelope ID: E6A5D7F7-1C23-4074-AD62-30C8DC63B60A

**9.7** **Construed as a Whole**. The provisions of the Plan shall be construed as a whole in such manner as to carry out the provisions thereof and shall not be construed separately without relation to the context.

## SECTION 10
## DISCLAIMERS

**10.1** **No Employment Rights**. Neither the terms of the Plan nor the Benefits hereunder nor the continuance thereof shall be a term of the employment of any employee or Participant, and the Employer shall not be obliged to continue the Plan. The terms of the Plan shall not give any employee the right to be retained in the employment of the Employer, and it does not change any employment policies of the Employer.

**10.2** **No Guarantee**. Neither the members of any committee appointed by the Employer nor any of the Employer's officers in any way secure or guarantee the payment of any benefit or amount which may become due and payable hereunder to any Participant or Beneficiary. Neither the members of any committee nor any of the Employer's officers shall be under any liability or responsibility (except to the extent that liability is imposed under ERISA) for failure to effect any of the objectives or purposes of the Plan by reason of the insolvency of the Plan Sponsor.

**10.3** **No Co-Responsibility**. Except as is otherwise provided in ERISA, no fiduciary shall be liable for an act or omission of another person with regard to a fiduciary responsibility that has been allocated to or delegated in the Plan or pursuant to procedures set forth in the Plan.

**IN WITNESS WHEREOF**, Wells Fargo & Company hereby amends and restates the Wells Fargo & Company Short-Term Disability Plan effective January 1, 2023, and has caused this Instrument to be executed by the authorized person signed below.

**WELLS FARGO & COMPANY**

DocuSigned by:

By: Mark Hickman

D4E67A124BC7429...

Name: Mark Hickman

Title: Head of Benefits

Date: 12/26/2022 | 9:11:36 PM PST