**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dustin Heintzman, | No. CV-25-01755-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Lincoln Financial Group, | |
| Defendant. | |

Pending before the Court are three motions filed by pro se Plaintiff Dustin Heintzman. (Docs. 6, 25, 26.) They include a "Motion to Dismiss for Lack of Subject Matter Jurisdiction With Respect to State Law Claims Alleging Fraud and Motion for Sanctions and Penalties Against Defendant and Their Attorneys," (Doc. 6); "Plaintiff's Formal Response to Court Order Dated September 3, 2025 and Motion for Reconsideration," (Doc. 25); and "Plaintiff's Motion for Remand to the Superior Court of Arizona, Maricopa County, and for Voluntary Dismissal of Count I Without Prejudice," (Doc. 26). In addition to these motions, Heintzman filed an Objection to the Notice of Removal filed by Defendant Lincoln Financial Group ("Lincoln"), (Doc. 7).

Also pending before the Court are two motions filed by Lincoln: a Motion to Dismiss Heintzman's Original Complaint, (Doc. 8-1); and a Motion to Dismiss Heintzman's Amended Complaint and to Strike Heintzman's Jury Demand, (Doc. 18-1.) Each of the pending motions and filings are addressed below.

## I.    FACTUAL BACKGROUND

Heintzman is a resident of the State of Arizona, proceeding pro se in this matter. (Doc. 16 at 4.)  Heintzman was employed by Wells Fargo and participated in the Wells Fargo & Company Short Term Disability Plan (the "Plan").  (*See* Doc. 19.)[1]  Lincoln "is a corporation engaged in the business of financial services, including providing employee benefits plans, insurance products, and retirement solutions."  (Doc. 16 at 4.)  All the allegations in the Amended Complaint stem from Lincoln's handling of Heintzman's Short Term Disability insurance benefits claim (the "Claim") under the Plan.  (*See generally id.*)

Heintzman alleges that he "worked with Defendant concerning various financial and benefits plans governed by ERISA" and that Lincoln, through its agents and employees, harmed him when they "engaged in deceptive, misleading, and unlawful business practices."  (*Id.* at 4.)  Heintzman claims Lincoln "misrepresented the terms and conditions of employee benefit plans, failed to comply with fiduciary duties imposed under ERISA, and engaged in unlawful conduct" affecting interstate commerce.  (*Id.*)

Heintzman's specific allegations center on the conduct of two named Lincoln agents, Tracy R. and Andrew W.[2], in connection with the handling of his Claim.  (*Id.* at 2.) Heintzman alleges that the agents failed to properly address voicemails Heintzman left for Tracy R., and that when confronted, Tracy R. falsely denied receiving the two voicemails. (*Id.*)  Heintzman further alleges that on two separate occasions, Tracy R. knowingly altered and submitted insurance documents that were materially inconsistent with Heintzman's

---

[1]    In support of its Motion to Dismiss, Lincoln submitted the Plan. (Doc. 19.) Because the Amended Complaint explicitly references the Plan and Heintzman's participation in it, (*see* Doc. 16), the Plan documents are incorporated by reference into the Amended Complaint, and the Court may consider them in ruling on the motion to dismiss without converting it to a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (holding that a court may consider documents incorporated by reference into a complaint on a motion to dismiss where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance").  Notably, Heintzman filed two response briefs in opposition to Lincoln's Motion to Dismiss, (Docs. 21, 21-1), and he did not question the authenticity of the Plan documents Lincoln filed.

[2]    To protect the privacy of individuals referenced herein, the Court refers to non-party individuals by their first name and last initial only.

original medical records. (*Id.*) Heintzman contends these alterations were "willful and predatory, not mere errors or negligence." (*Id.*) Heintzman claims that he "took proper steps to escalate these concerns to senior leadership within [Lincoln], who declined to engage in resolving the matter." (*Id.*)

Heintzman additionally alleges that a Lincoln customer service claims agent and that agent's supervisor disseminated false information to his employer regarding his certified medical leave dates, and that the same agent falsely insinuated that his Claim was closed because he was no longer employed by Wells Fargo, which Heintzman characterizes as "utterly false, predatory, and criminal." (*Id.* at 3.)

## II.    PROCEDURAL HISTORY

Heintzman initiated this action on April 23, 2025, in the Superior Court of Arizona, Maricopa County, asserting state law claims related to Lincoln's alleged fraudulent conduct in the administration of his Claim. (Doc. 1-1 at 9, 13.) Lincoln was served with the Summons and Complaint on May 2, 2025. (Doc. 1 at 1.)

Lincoln removed this action to federal court on May 22, 2025, invoking the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. (*See id.*) In its notice of removal, Lincoln asserted that federal jurisdiction exists because Heintzman's claims relate to the laws of the United States—specifically, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA")—and, alternatively, under the Court's diversity jurisdiction. (*Id.* at 1, 3.) On May 28, 2025, Heintzman filed two documents objecting to the notice of removal: (1) a "Motion to Dismiss for Lack of Subject Matter Jurisdiction With Respect to State Law Claims Alleging Fraud and Motion for Sanctions and Penalties Against Defendant and Their Attorneys," (Doc. 6)[3]; and (2) an Objection to the Notice of Removal filed by Lincoln, (Doc. 7). In those filings, Heintzman argued that Lincoln's notice of removal was procedurally improper, that this Court lacked subject matter jurisdiction over his state law fraud claims, and that Lincoln's counsel should be sanctioned $10,000 for filing the notice of removal without first conferring with

---

[3]    Lincoln responded to Heintzman's "Motion to Dismiss" on June 11, 2025. (Doc. 14.)

Heintzman.  (*See generally* Docs. 6, 7.)

The following day, on May 29, 2025, Lincoln moved to dismiss Heintzman's original complaint and to strike Heintzman's demand for a jury trial.  (Doc. 8-1.)  Lincoln argued that Heintzman's complaint must be dismissed because he asserted state law claims that are completely preempted by ERISA and that no right to a jury trial exists for ERISA claims.  (*Id.*)  Heintzman responded, (Docs. 11, 12), and Lincoln replied, (Doc. 13).

On June 18, 2025, while Heintzman's early jurisdictional objections and Lincoln's initial motion to dismiss were pending, Heintzman filed an Amended Complaint, which is the operative pleading in this case.  (Doc. 16.)[4]  The filing of the Amended Complaint rendered Lincoln's first motion to dismiss, (Doc. 8-1), moot.[5]

The Amended Complaint asserts three counts against Lincoln.  (Doc. 16 at 5–7.)  In Count I, Heintzman alleges insurance fraud and misrepresentation by Lincoln's agents under Arizona and federal law.  (*Id.* at 5.)  Count II asserts a claim for forgery and insurance document tampering in violation of Arizona and federal law.  (*Id.*)  And Count III alleges additional federal and state legal violations, including obstruction, misinformation to Heinzman's employer, and violations of consumer protection laws.  (*Id.* at 6.)  The Amended Complaint also invokes federal criminal statutes, including 18 U.S.C. §§ 1033, 1341, and 1343, and includes a demand for a jury trial.  (*Id.* at 5–6.)

On July 1, 2025, Lincoln filed a Motion to Dismiss the Amended Complaint and to

---

[4]    Because Heintzman filed the Amended Complaint within 21 days of service of Lincoln's Motion to Dismiss, (Doc. 8-1), Heintzman was entitled to amend his complaint once as a matter of course without leave of Court pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

[5]    Heintzman's "Motion to Dismiss," (Doc. 6), is not rendered moot by the filing of the Amended Complaint.  Although styled as a "motion to dismiss," the substance of Doc. 6 is a challenge to this Court's subject matter jurisdiction and a request for remand to state court—relief that remains live regardless of which version of the complaint is operative. Courts are obligated to construe pro se filings liberally and to look to the substance of the relief sought rather than the label placed on the motion.  *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) ("The obligation to construe pro se filings liberally means courts must frequently look to the contents of a pro se filing rather than its form.").  Because subject matter jurisdiction may be challenged at any time and cannot be waived, *see* Fed. R. Civ. P. 12(h)(3), and because the jurisdictional arguments raised in Doc. 6 are substantively identical to those raised in Heintzman's later Motion to Remand, (Doc. 26), the Court addresses both motions together in Section III of this Order.

Strike Heintzman's Jury Demand under Rule 12(b)(6) and 12(f).  (Doc. 18-1.)  Lincoln argued that all three counts of the Amended Complaint assert state law claims preempted by ERISA under 29 U.S.C. § 1144(a), that the federal criminal statutes invoked by Heintzman do not create private rights of action, and that no right to a jury trial exists for claims subject to ERISA.  (*Id.*)  Heintzman filed two responsive briefs, (Docs. 21, 21-1), and Lincoln replied to both, (Doc. 22).  On August 29, 2025, Heintzman filed a sur-reply, (Doc. 23), without first seeking leave of the Court as required by Local Rule 7.2 and on September 3, 2025, the Court struck the sur-reply.  (Doc. 24.)  On September 8, 2025, Heintzman filed a "Formal Response to the Court Order Dated September 3, 2025 and Motion for Reconsideration," seeking reconsideration of the Order striking the sur-reply and retroactive or nunc pro tunc leave to file the sur-reply.  (Doc. 25.)[6]

On November 19, 2025, Heintzman filed a Motion for Remand to the Superior Court of Arizona, Maricopa County, and for Voluntary Dismissal of Count I Without Prejudice, arguing that voluntary dismissal of his benefits-related claim would sever the federal nexus and require remand of the remaining state law claims to state court.  (Doc. 26.)  Lincoln responded on December 3, 2025, arguing that the motion was procedurally improper, that diversity jurisdiction independently anchors the case in federal court regardless of the ERISA issues, and that the remaining claims are in any event still completely preempted by ERISA.  (Doc. 27.)

Heintzman has requested oral argument on all pending motions.  (*See e.g.*, Doc. 25 at 5.)  The Court concludes that oral argument would not assist in resolving the issues presented.  *See* LRCiv 7.2(f).  Accordingly, the request for oral argument is denied.

All pending motions are addressed below.

## III.    MOTION TO REMAND AND JURISDICTIONAL CHALLENGES

Heintzman has filed three documents challenging this Court's subject matter jurisdiction and seeking remand of this action to the Superior Court of Arizona, Maricopa

---

[6]    The Court has determined that it is unnecessary to receive further briefing.  *See Pierre-Jones v. DeFranco*, 2025 WL 1370218, at *1 (E.D. Cal. 2025) (deeming "response by Defendant to be unnecessary before ruling on the motion").

County.  First, in his Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Sanctions, filed shortly after removal on May 28, 2025, Heintzman argued that Lincoln's invocation of ERISA preemption as a basis for federal jurisdiction was improper and that his state law fraud claims belong exclusively in state court.  (Doc. 6.)  Second, in his Response in Objection to the Notice of Removal, filed the same day, Heintzman contended that Lincoln's removal notice was procedurally defective and urged the Court to return the matter to state court.  (Doc. 7.)  Third, in his Motion for Remand and for Voluntary Dismissal of Count I Without Prejudice, filed on November 19, 2025, Heintzman sought to voluntarily dismiss his benefits-related claim and remand the remaining state law claims on the theory that doing so would sever the federal nexus supporting jurisdiction.  (Doc. 26.)

Because all three filings raise the same core question—whether this Court has subject matter jurisdiction over this action—the Court addresses them together. Furthermore, the Court addresses this threshold issue before turning to the merits of the other pending motions.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."  (cleaned up)); *id.* (rejecting the practice of "assuming jurisdiction for the purpose of deciding the merits" (internal quotations omitted)).  For the reasons set forth below, the Court finds that it has subject matter jurisdiction over this action.

### A.    Legal Standard

Where, as here, a plaintiff moves to remand, the Court must determine whether it may assert federal subject matter jurisdiction.  A defendant may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a).  "District courts are courts of limited jurisdiction, and that jurisdiction is defined by federal statute—subject, of course, to constitutional limitations." *Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 560 (9th Cir. 2025).  The main "two kinds of cases" over which Congress has granted jurisdiction are "federal question cases and

diversity cases." *Id.* (citation omitted).

"For diversity jurisdiction to attach, the suit must be between citizens of different states, and the 'amount in controversy' must exceed $75,000." *Id.* (quoting 28 U.S.C. § 1332(a)). To determine whether the amount-in-controversy requirement is met, courts "look no farther than the pleadings . . . unless from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1147 (9th Cir. 2022) (quotation marks omitted). Ultimately, though, the "burden is on the party removing the case from state court to show the exercise of federal jurisdiction is appropriate." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) (quotation marks omitted). A removing defendant must meet its burden "by a preponderance of the evidence." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

### B.    Diversity Jurisdiction Under 28 U.S.C. § 1332

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, independent of any ERISA-related federal question issues. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). Both requirements are satisfied here.

First, complete diversity of citizenship exists between the parties. Heintzman is an individual and resident of the State of Arizona. (Doc. 16 at 4.) Lincoln Financial Group is an Indiana corporation with its principal place of business in Pennsylvania. (Doc. 5 at 1.) Because Heintzman is a citizen of Arizona and Lincoln is a citizen of Indiana and Pennsylvania, complete diversity of citizenship exists between the parties. *See* 28 U.S.C. § 1332(c)(1) (a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business).

Second, the amount in controversy requirement is satisfied by a wide margin. In the Amended Complaint, Heintzman seeks $100 million in compensatory and punitive damages. (Doc. 16 at 6.) This demand far exceeds the $75,000 threshold required by 28 U.S.C. § 1332(a). As a general rule, the amount in controversy alleged in a complaint

controls unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

Because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  This basis for jurisdiction is independent of any federal question jurisdiction the Court may have under ERISA and diversity jurisdiction alone is sufficient to defeat Heintzman's motions to remand (however captioned).  Accordingly, even if Heintzman were correct that his claims are not preempted by ERISA, remand would still be improper because diversity jurisdiction independently anchors this case in federal court.

**C.      Heintzman's Remand Arguments**

Having established jurisdiction, the Court turns to Heintzman's specific arguments in favor of remand.

### 1.  Heintzman's Early Jurisdictional Challenges

Heintzman's early objections to removal argued that Lincoln's invocation of ERISA preemption constituted an improper attempt to manufacture federal jurisdiction and that state courts retain exclusive authority over independent state law fraud claims.  (Docs. 6, 7.)  These arguments are unavailing for the reasons set forth above.  As the Court has found, diversity jurisdiction independently establishes federal subject matter jurisdiction regardless of the ERISA issues.  Additionally, Heintzman's assertion that Lincoln was required to obtain authorization from the Superior Court of Arizona before removing this action is incorrect as a matter of law—removal is a unilateral statutory right exercised by the defendant upon proper grounds, requiring no state court permission.  *See* 28 U.S.C. § 1446. Accordingly, Docs. 6 and 7 will be denied to the extent they seek remand.

### 2.  Heintzman's Motion to Remand and Voluntary Dismissal of Count I

Heintzman's Motion to Remand, (Doc. 26), presents additional arguments, each of which fails independently.

First, Heintzman's attempt to voluntarily dismiss only Count I of his Amended

Complaint pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) is procedurally improper. Rule 41 applies to the voluntary dismissal of an entire action, not to the dismissal of individual claims within a multi-count complaint. *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 687–88 (9th Cir. 2005). Instead, the proper vehicle through which to withdraw individual claims against a single defendant is an amended complaint under Federal Rule of Civil Procedure 15. *Id.* at 687. Heintzman cannot use Rule 41 to selectively remove one count while retaining the others under the Federal Rules.

Second, even if Count I was dismissed, the Court retains jurisdiction. Diversity jurisdiction under 28 U.S.C. § 1332 establishes federal subject matter jurisdiction over this entire action. Diversity jurisdiction attached at the time of removal and is based solely on the citizenship of the parties and the amount in controversy, neither of which would be affected by the dismissal of any particular claim. *See, e.g.*, *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980) (as a general rule, jurisdiction is determined as of the time of removal; later amendments do not deprive the district court of jurisdiction).

Third, the motion was not timely filed to the extent it raises any basis for remand other than lack of subject matter jurisdiction. A motion to remand on any basis other than lack of subject matter jurisdiction must be filed within 30 days of the filing of the notice of removal. 28 U.S.C. § 1447(c). Lincoln filed its Notice of Removal on May 22, 2025. (Doc. 1.) Heintzman did not file the instant Motion to Remand until November 19, 2025, nearly six months later. (Doc. 26.) Any non-jurisdictional grounds for remand are therefore waived.

Finally, Heintzman requests that the Court issue an order precluding Lincoln from seeking removal in any future state court proceedings on ERISA grounds. This request is denied. Courts do not prospectively enjoin parties from asserting jurisdictional positions in future proceedings, and such relief would be particularly inappropriate here where Lincoln's jurisdictional basis has been sustained on the merits.

Accordingly, Heintzman's Motion to Remand (Doc. 26) and all related jurisdictional challenges (Docs. 6, 7) will be denied.

## IV.     HEINTZMAN'S MOTION FOR SANCTIONS

In addition to seeking remand, Heintzman's Motion, (Doc. 6), requests that the Court impose a monetary penalty of $10,000 against Lincoln and sanction Lincoln's attorneys pursuant to 28 U.S.C. § 1927 for filing the Notice of Removal without prior conferral with Heintzman, and for engaging in conduct that Heintzman characterizes as an abusive litigation tactic designed to delay and frustrate his rights.  (*Id.* at 2–3.)  For the reasons set forth below, Heintzman's request for sanctions will be denied.

### A.     Legal Standard

Under § 1927, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'"  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quotation marks omitted).

### B.     Discussion

Heintzman's primary basis for sanctions is that Lincoln's counsel failed to confer with him prior to filing the Notice of Removal.  (Doc. 6 at 3.)  This argument fails as a matter of law.  Neither the Federal Rules of Civil Procedure nor the Local Rules of the District of Arizona, nor any other applicable authority require a defendant to confer with a plaintiff before exercising its statutory right to remove a case to federal court.  Removal is a unilateral statutory right granted to defendants by Congress under 28 U.S.C. § 1446 and requires no notice to, consent from, or conferral with the opposing party prior to filing.  Accordingly, Lincoln's failure to confer with Heintzman before removal cannot serve as a basis for sanctions.

Heintzman's remaining basis for sanctions is that Lincoln's notice of removal was frivolous, made in bad faith, and constituted an abusive litigation tactic designed solely to evade state court accountability. (*Id.* at 2–3.) The record does not support this characterization. As set forth above, the Court has diversity jurisdiction over this action. The existence of a well-supported jurisdictional basis is the antithesis of "frivolous" or "vexatious" litigation conduct. *See* 28 U.S.C. § 1927; *In re Keegan Mgmt. Co.*, 78 F.3d at 436. Lincoln's removal reflected a reasonable and well-founded assessment of the applicable law, not an attempt to manipulate the judicial process. The fact that Heintzman disagrees with Lincoln's jurisdictional position, or that Heintzman would have preferred to litigate in state court, does not render Heintzman's conduct sanctionable.

Even construing Heintzman's pro se filings liberally, as is required, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Heintzman has not identified any conduct by Lincoln or its counsel that rises to the level of bad faith required to support sanctions under either 28 U.S.C. § 1927. To the contrary, Lincoln's counsel have acted in full compliance with their professional and procedural obligations—filing a timely and procedurally proper Notice of Removal grounded in well-established statutory and case authority. Such conduct is the very opposite of sanctionable behavior. Accordingly, Heintzman's request for sanctions pursuant to § 1927 will be denied.

## V.    MOTION TO DISMISS

Having determined that it has subject matter jurisdiction over this action, the Court proceeds to address Lincoln's motion to dismiss.

### A.    Heintzman's Responses, Sur-Reply, and Motion for Reconsideration

On July 1, 2025, Lincoln moved to dismiss the Amended Complaint and to strike Heintzman's jury demand. (Doc. 18-1.) The motion argues that each of Heintzman's three counts asserts state law claims expressly preempted by ERISA, 29 U.S.C. § 1144(a); that the federal criminal statutes cited in the Amended Complaint do not provide a private right of action; and that ERISA does not afford a right to trial by jury. Heintzman filed two responses in opposition—a response to the motion itself, (Doc. 21-1), and a response to

Lincoln's memorandum of points and authorities (Doc. 21)[7]—and Lincoln filed a consolidated Reply addressing both. (Doc. 22.)

On August 29, 2025, Heintzman filed a sur-reply, (Doc. 23), without first seeking leave of the Court as required by Local Rule 7.2. On September 3, 2025, the Court issued an Order striking the sur-reply as violative of Local Rule 7.2. (Doc. 24.) On September 8, 2025, Heintzman filed a Motion for Reconsideration of the Court's September 3, 2025 Order, requesting that the Court reconsider and vacate the Order striking the sur-reply or grant retroactive leave to file the sur-reply. (Doc. 25 at 4.) Heintzman argues that his pro se status warrants procedural leniency, and that the sur-reply was necessitated by new arguments raised in Lincoln's Reply. (*Id.* at 3–5.)

The Court has discretion in determining whether to grant a motion for reconsideration. *See Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). The grounds for reconsideration are set forth in Local Rule 7.2(g) which provides: "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g); *see also School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law).

Heintzman has satisfied none of these requirements. The September 3, 2025 Order correctly applied Local Rule 7.2, which does not permit the filing of a sur-reply without prior leave of the Court. That rule applies equally to represented and unrepresented parties. While the Court is obligated to construe pro se filings liberally, *Erickson*, 551 U.S. at 94, it is equally well established that pro se litigants are "required to follow rules, including

---

[7] Because Heintzman is proceeding pro se, the Court construes his filings liberally and considers both of his responses to the Motion to Dismiss in resolving the issues presented. *See Erickson*, 551 U.S. at 94. Although the Local Rules contemplate a single response, the Court exercises its discretion to consider Heintzman's additional filing in the interest of resolving the matter on the merits.

local rules." *Espy v. Indep. Blue Cross*, 613 F. App'x 633, 633 (9th Cir. 2015). Heintzman's pro se status therefore does not excuse his failure to seek leave before filing the sur-reply.

Furthermore, a review of Lincoln's Reply, (Doc. 22), confirms that it raised no new arguments beyond those presented in the underlying motion to dismiss. Lincoln's Reply responded directly to arguments Heintzman himself raised in his opposition briefs and did not introduce new factual assertions or legal theories that Heintzman had not already had a full opportunity to address. Accordingly, no basis exists to grant retroactive leave or to reconsider the September 3, 2025 Order, and Heintzman's reconsideration motion, (Doc. 25), will be denied. Put another way, the sur-reply will not be considered.

### B.    Motion to Dismiss Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if" actual proof of those facts "is improbable[ ] and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted). Claims that are completely preempted by ERISA are subject to dismissal under Rule 12(b)(6). *See, e.g.*, *Tingey v. Pixley–Richards W., Inc.*, 953 F.2d 1124, 1131–33 (9th Cir.1992).

The Court liberally construes the pleadings of pro se plaintiffs. *Erickson*, 551 U.S.

- 13 -

at 94. And "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quotation marks omitted.) "A liberal construction of a pro se complaint, however, does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

## C.    Nature of Heintzman's Claims

Before turning to the substance of Heintzman's individual counts, the Court must address a threshold issue that runs through the Amended Complaint: Heintzman's repeated invocation of criminal statutes as the basis for civil liability. Throughout the Amended Complaint, Heintzman invokes both federal and state criminal statutes as grounds for relief, including 18 U.S.C. § 1033 (crimes affecting persons engaged in the business of insurance affecting interstate commerce), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), A.R.S. § 13-2002 (forgery), A.R.S. § 13-2310 (fraudulent schemes and artifices), and A.R.S. § 20-463 (fraudulent insurance acts). (Doc. 16 at 2, 5–6.)

None of these statutes provide Heintzman private rights of action because there can be no private right of action for violations of criminal statutes without specific authority from the legislature. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006). The federal criminal statutes Heintzman invokes—18 U.S.C. §§ 1033, 1341, and 1343—authorize only the United States Attorney to prosecute criminal violations in federal court, and contain no express or implied private right of action that would permit a private citizen to bring a civil lawsuit based on alleged violations. *See, e.g.*, *Guerneville Bus. Corp. v. Boasberg*, 2012 WL 13054255, at *1 (N.D. Cal. 2012) (recognizing that no private right of action exists under 18 U.S.C. § 1033); *Blake v. Irwin Mortg.*, 2011 WL 98538, at *3 (D. Ariz. 2011) (recognizing no private right of action exists under 18 U.S.C. §§ 1341, 1043).

Similarly, the Arizona criminal statutes Heintzman invokes—A.R.S. §§ 13-2002, 13-2310, and 20-463—are criminal provisions enforced by the Arizona Attorney General and the Arizona Department of Insurance (for § 20-463), and none creates a private civil

cause of action.  Thus, to the extent the Amended Complaint asserts claims for violations of these statutes, those claims will be dismissed.

### D.    Heintzman's Remaining Claims

Having rejected the claims based on criminal statutes, the Court liberally construes the Amended Complaint as asserting the following state law claims: insurance bad faith, fraud, misrepresentation, defamation, and violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq.[8]  (*See generally* Doc. 16.) Lincoln argues all these claims are preempted by ERISA. (Doc. 18-1 at 1.)  Before the Court can determine whether the claims are preempted by ERISA, it must first determine whether the Plan at issue is governed by ERISA.

### 1.    Applicability of ERISA

ERISA applies to "any employee benefit plan" established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce," 29 U.S.C. § 1003, and governs both welfare and pension plans.  As relevant to this case, an employee welfare benefit plan is defined as a plan established or maintained by an employer for the purpose of providing benefits to participants "in the event of sickness, accident, disability, death, or unemployment."  29 U.S.C. § 1002(1).  "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person."  *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000) (quotation marks omitted).

The Plan is an ERISA-governed welfare benefit plan Plan—it was established and is maintained by Wells Fargo as a welfare benefit plan within the meaning of ERISA. (Doc. 19 at 5–8; *see id.* at 5 ("The Wells Fargo & Company Short-Term Disability Plan was established to provide a payment to regular and fixed term Employees should a disability occur during employment."); *id.* at 7 ("It is intended that this Plan is an employee welfare benefit plan within the meaning of ERISA."))  The Plan was created to provide disability

---

[8]    Although the Amended Complaint states that it is an "action incorporating both federal and state claims . . . including but not limited to claims under [ERISA]," (Doc. 16 at 1), Heintzman does not plead any ERISA claims.  Accordingly, he has only asserted state law claims.

benefits to eligible Wells Fargo employees, and benefits under the Plan are funded by Wells Fargo through the Wells Fargo & Company Short-Term Disability Plan Trust. (*Id.* at 9–10.) These facts satisfy each of the elements in 29 U.S.C. § 1002(1). Moreover, Heintzman concedes that his claims arise in part under ERISA and that he "worked with Defendant concerning various financial and benefits plans governed by ERISA." (Doc. 16 at 1, 4.) Whether ERISA covers the Plan is therefore not in dispute.

### 2. ERISA Preemption

ERISA provides for the exclusive regulation of employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA's preemption provision broadly declares that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [non-exempt] employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan if it has "a connection with or reference to such a plan." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quotation marks omitted). To determine whether a state law has the necessary connection, courts look "both to ERISA's objectives as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the state law's effect on ERISA plans." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). This preemption provision has been recognized as "the most sweeping federal preemption statute ever enacted by Congress," *California Hosp. Ass'n v. Henning*, 569 F. Supp. 1544, 1546 (C.D. Cal. 1983), and applies regardless whether the state law is specifically directed at employee benefit plans, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97–98 (1983). Furthermore, ERISA provides for exclusive civil enforcement through its civil remedies provision at 29 U.S.C. § 1132(a), and "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

Each of Heintzman's claims, however liberally construed, arises from the same nucleus of alleged conduct: Lincoln's handling of Heintzman's Claim, including the alleged alteration of insurance documents by Lincoln's agent, the alleged dissemination of

false information to Wells Fargo regarding Heintzman's medical leave dates and employment status, and the alleged misrepresentations made to Heintzman during the claims administration process. (Doc. 16 at 2-3, 5-6.) Every act of alleged misconduct identified in the Amended Complaint occurred in the context of and in direct connection with the administration of Heintzman's Claim under the Plan. His state law claims therefore have a direct connection with, and refer to, an ERISA-governed employee benefit plan, and each claim relates to the administration of that plan within the meaning of 29 U.S.C. § 1144(a). *Metro. Life Ins.*, 471 U.S. at 739. Permitting Heintzman to pursue these state law claims premised on conduct occurring entirely within the claims administration process would directly affect ERISA plan administration in a manner Congress did not intend to permit, *Egelhoff*, 532 U.S. at 147, and would provide an alternative means of obtaining relief that duplicates, supplements, or supplants ERISA's exclusive civil enforcement remedy, *Davila*, 542 U.S. at 209.

The Supreme Court and the Ninth Circuit have consistently held that state law claims of this nature—including insurance bad faith, fraud, misrepresentation, defamation, and consumer protection claims—are preempted by ERISA where, as here, they arise from the administration of an employee benefit plan and the denial of plan benefits. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) (concluding that breach of contract claim was preempted by ERISA); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030 (9th Cir. 2000) ("ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit and breach of contract." (quotation marks omitted)); *Tingey*, 953 F.2d at 1131–33 (holding plaintiffs' causes of action for breach of contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and violations of the Arizona Insurance Code were preempted by ERISA); *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1423 (9th Cir. 1991) (dismissing fraud claim where it is preempted by ERISA because it "relates to an employee benefit plan"); *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1007 (9th Cir. 1998) ("[T]he Supreme Court has held that ERISA preempts state common law tort and contract

causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan." (citing *Pilot Life*, 481 U.S. at 57)).

Accordingly, all state law claims in the Amended Complaint are preempted by ERISA and will be dismissed.[9]

### E.    LEAVE TO AMEND

If a pleading can be cured by the allegation of other facts, a pro se litigant is typically entitled to an opportunity to amend a complaint before dismissal of the action. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000). A finding of futility may justify denying leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts may also consider "bad faith, undue delay, prejudice to the opposing party . . . and whether the party has previously amended his pleadings." *Id.* Finally, a court may deny leave to amend if the "movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*

Amendment would be futile with respect to Heintzman's criminal statute claims and state law tort claims. The criminal statute claims fail because no private right of action exists under the statutes Heintzman invokes. The state law tort claims fail because any civil claim arising from the administration of Heintzman's Claim will relate to an ERISA-governed plan within the meaning of 29 U.S.C. § 1144(a) regardless of the label placed on it. The connection between Heintzman's claims and the ERISA plan is inherent in the conduct alleged, not in the manner in which the complaint is drafted, and repleading cannot sever that connection. Those claims are therefore dismissed with prejudice.

Amendment is not futile, however, with respect to potential claims arising under ERISA's civil enforcement provisions. Lincoln argues that it is not a proper party, (Doc. 18-1 at 3), but at this stage, the record does not contain sufficient information to determine

---

[9]    Heintzman's Amended Complaint demands a jury trial. (Doc. 16 at 7.) Because all Heintzman's claims are dismissed, the jury demand and Lincoln's motion to strike the jury demand are denied as moot. The Court notes, however, that even if any of Heintzman's claims survived dismissal there is no constitutional or statutory right to a jury trial in ERISA claims, which are equitable in nature. *See, e.g., Nevill v. Shell Oil Co.*, 835 F.2d 209, 213 (9th Cir. 1987); *Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 996–97 (9th Cir. 2000).

whether Lincoln is a proper defendant for any ERISA claim Heintzman might bring.  Under ERISA, the proper defendant depends on the nature of the claim asserted.  With respect to a claim to recover benefits under ERISA § 502(a)(1)(B), the Ninth Circuit has held that potential liability is not limited to the plan or named plan administrator, and that an entity such as a claims administrator may also be a proper defendant depending on the level of responsibility it assumed in approving or denying benefits.  *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc).

Additionally, ERISA § 502(a)(2) and ERISA § 502(a)(3), permit an ERISA plan beneficiary to bring an action for breach of fiduciary duty against an ERISA plan fiduciary.  *Vaughn v. Bay Envl. Mgmt.*, 567 F.3d 1021, 1028 (9th Cir. 2009); *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 377–78 (9th Cir. 1996).  An individual is a plan fiduciary if they exercise "any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996); *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009).

Because Heintzman may be able to amend his complaint to allege facts sufficient to establish that Lincoln or another party is a proper defendant, leave to amend is granted.  Heintzman may file a second amended complaint asserting claims under ERISA's civil enforcement provisions no later than thirty (30) days from the date of this Order.  Heintzman is advised that a second amended complaint supersedes all previous complaints.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  Thus, after amendment, both the original complaint and the first amended complaint are treated as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action raised in a previous complaint is waived if it is not alleged in the second amended complaint.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

Accordingly,

**IT IS ORDERED** that Lincoln's Motion to Dismiss Heintzman's Original Complaint (Docs. 8, 8-1) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Heintzman's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Sanctions (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Heintzman's Objection to the Notice of Removal (Doc. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Heintzman's Motion to Remand and for Voluntary Dismissal of Count I Without Prejudice (Doc. 26) is **DENIED**.

**IT IS FUTHER ORDERED** the Heintzman's Formal Response to the Court Order Dated September 3, 2025 and Motion for Reconsideration (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Lincoln's Motion to Dismiss the Amended Complaint (Docs. 18, 18-1) is **GRANTED**. To the extent the Amended Complaint asserts claims for violations of federal and state criminal statutes, including 18 U.S.C. §§ 1033, 1341, and 1343, A.R.S. §§ 13-2002, 13-2310, and 20-463, those claims are **DISMISSED WITH PREJUDICE.** To the extent the Amended Complaint asserts state law claims, including insurance bad faith, fraud, misrepresentation, defamation, and violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq., those claims are **DISMISSED WITH PREJUDICE** as preempted by ERISA.

**IT IS FURTHER ORDERED** that Lincoln's Motion to Strike Heintzman's Jury Demand (Doc. 18, 18-1) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Heintzman is granted leave to file a Second Amended Complaint **within thirty (30) days** of the date of this Order. Any Second Amended Complaint must be limited to claims arising under ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a). Failure to file a Second Amended Complaint within thirty (30) days will result in dismissal of this action.

Dated this 5th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge